817 F.2d 566
 125 L.R.R.M. (BNA) 2538, 43 Empl. Prac. Dec. P
37,065,
55 USLW 2645, 106 Lab.Cas. P 12,359
 Angel ZAMORA, et al., Plaintiffs-Appellees/Cross-Appellants,
v.
LOCAL 11, HOTEL EMPLOYEES AND RESTAURANT EMPLOYEES
INTERNATIONAL UNION (AFL- CIO), et al.,
Defendants-Appellants/Cross-Appellees.
 Nos. 86-5573, 86-5746.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 3, 1986.
Decided May 18, 1987.
As Amended June 9, 1987.
 
 Arturo Morales, Los Angeles, Cal., for plaintiffs-appellees/cross-appellants.
 Lewis Levy, Los Angeles, Cal., for defendants-appellants/cross-appellees.
 Michael J. Goldberg, Pittsburgh, Pa., Linda J. Wong, Los Angeles, Cal., and William R. Tamayo, Oakland, Cal., for amicus curiae.
 Appeal from the United States District Court for the Central District of California.
 Before ANDERSON, FARRIS,* and CANBY, Circuit Judges.
 J. BLAINE ANDERSON, Circuit Judge:
 
 
 1
 These two consolidated appeal arise out of the same action. Local 11, Hotel Employees and Restaurant Employees International Union ("Local 11") seeks to reverse the grant of summary judgment against it by the district court which ordered Local 11 to provide an English-Spanish translator for the monthly union membership meetings. Angel Zamora ("Zamora") appeals the denial of his motion for attorneys' fees after obtaining the relief requested in the main action. For the reasons set forth below, we affirm the judgment in the main action and reverse and remand the attorneys' fee determination.
 
 I.
 
 2
 Local 11 is a labor organization and the collective bargaining representative of catering, hotel, restaurant and food service employees in the Los Angeles area. Zamora and other appellees are members of Local 11 who speak Spanish and are not sufficiently bilingual to understand the English language in either written or spoken form. In 1984, Local 11 consisted of approximately 16,500 members, forty-eight percent of whom understood only Spanish.
 
 
 3
 Since 1978, Local 11 has had its collective bargaining agreements, monthly newsletters and various notices printed in Spanish to accommodate its Spanish-speaking members. At the nomination meetings and the contract ratification meetings, which occur every three years, English and Spanish translation is provided for the discussion taking place.[1] However, at the monthly membership meetings, which are usually attended by 50-75 members, translation is not provided with respect to the oral debate which is conducted in English. The debate takes place on topics such as union expenditures, salaries of officers, election of officers, general complaints with particular employers and various other operational matters. In industry parlance, this debate is commonly identified as "shop talk." Translation at the monthly meetings is provided only when union officer nominations take place or when Spanish-speaking members comment or ask questions and then request that their comments or questions be translated for the benefit of others attending the meeting. When translation is provided at the monthly meetings, the translation is performed by a bilingual union officer and not by an independent professional translator.
 
 
 4
 In the fall of 1982, Zamora and other union members petitioned Local 11 officers through the internal union procedures to provide a qualified translator at all monthly membership meetings who would simultaneously translate all meeting proceedings and discussion into Spanish and English. The union officers brought the petition before the members at the next monthly meeting. With the union members in attendance acting as a legislative body, the proposition to translate the meetings was debated and then defeated by a majority vote of the attending members. In February, 1984, Zamora and other Spanish-speaking union members commenced this action in district court alleging the failure to provide simultaneous translation at the regular meetings was a violation of their equal participation and freedom of speech and assembly rights guaranteed under Title I, Sec. 101(a)(1) and (2) of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. Sec. 411(a)(1) and (2). After the suit was brought, the union secretary filed a declaration with the district court stating that Local 11 would translate the monthly membership meetings in their entirety into Spanish. However, when this translation policy was announced at the next regular monthly meeting, an attending union member made a new motion that the meeting be conducted only in English. This motion was discussed and passed by a majority vote of the members in attendance. As a result, the regular meetings are conducted in accordance with the past practice of translating only the pertinent communications, collective bargaining agreements, monthly newsletters and notices. No translation is provided with respect to the "shop talk" except for isolated comments or questions when requested.
 
 
 5
 Upon cross-motions for summary judgment, the district court granted Zamora's motion, finding Local 11's non-translation rule violated the equal participation rights guaranteed by section 101(a)(1) of the LMRDA, 29 U.S.C. Sec. 411(a)(1). Accordingly, the district court ordered Local 11 to provide a qualified translator at all monthly membership meetings. The translator was ordered to translate all debate, questions and other proceedings with the exception of the reading of the prior meeting's minutes and social community announcements. After being granted summary judgment, Zamora moved for an award of attorneys' fees. The district court denied the motion without comment. These appeals followed.
 
 II.
 
 6
 In 1959 Congress passed the LMRDA with the purpose of guaranteeing "full and active participation by the rank and file in the affairs of the union." American Federation of Musicians v. Wittstein, 379 U.S. 171, 182-83, 85 S.Ct. 300, 307, 13 L.Ed.2d 214, 221 (1964). Section 101(a)(1) is contained in Title I, the "Bill of Rights" of the LMRDA, and provides:
 
 
 7
 Every member of a labor organization shall have equal rights and privileges within such organizations to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.
 
 
 8
 29 U.S.C. Sec. 411(a)(1). To ensure that a labor organization's constitution or bylaws are not inconsistent with section (a)(1), subsection 101(b) provides: "Any provision of the constitution and bylaws of any labor organization which is inconsistent with the provisions of this section shall be of no force or effect." 29 U.S.C. Sec. 411(b).
 
 
 9
 * Today we must decide whether a union in which forty-eight percent of its members understand only Spanish must provide a translator at monthly membership meetings in order to guarantee the equal participation rights granted in section 101(a)(1). In answering this question, we first consider whether the union rule that fails to provide for a translator conflicts with a right guaranteed by section 101(a)(1). If the rule of non-translation does conflict, we then must decide whether the rule is reasonable under the proviso. See United Steelworkers v. Sadlowski, 457 U.S. 102, 111, 102 S.Ct. 2339, 2345, 72 L.Ed.2d 707, 715 (1982). The district court granted Zamora summary judgment on this issue. We normally review a grant of summary judgment de novo, and determine whether there was a genuine issue of material fact and whether the substantive law was correctly applied. Lynn v. Sheet Metal Workers' Int'l Assn., 804 F.2d 1472, 1477 (9th Cir.1986).
 
 B
 
 10
 We agree with Zamora that the union's current rule of not providing a qualified translator at monthly membership meetings does conflict with section 101(a)(1). Steelworkers, 457 U.S. at 112, 102 S.Ct. at 2346, 72 L.Ed.2d at 716. The section guarantees to every member the right to "participate in the deliberations" at union business meetings. Since Zamora and other Spanish-speaking members do not understand English (and many English-speaking members do not understand Spanish), absent a translator, they cannot fully participate in the give and take of "shop talk". Moreover, if union members cannot understand the discussion taking place at the membership meetings, they cannot be expected to make informed nomination and voting decisions. Nomination and voting rights are rights equally guaranteed by section 101(a)(1). Thus the practical effect of the union's non-translation rule is to restrict not only participation rights, but voting rights as well. While translation is provided for the collective bargaining agreements and at contract ratification meetings, this is not sufficient to sustain the union's rule. The participation rights guaranteed in section 101(a)(1) should apply equally to all union membership meetings. See McGinnis v. Local Union 710, International Brotherhood of Teamsters, 774 F.2d 196, 202 (7th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1638, 90 L.Ed.2d 184 (1986) (finding a requirement that union members vote in person on the union constitution and bylaws violative of the right to equal voting privileges); American Postal Workers Union, Headquarters Local 6885 v. American Postal Workers Union, 665 F.2d 1096, 1104 (D.C.Cir.1981) (parent union, in not submitting the collective bargaining agreement to the local union, violated members' equal rights and privileges); Alvey v. General Electric Co., 622 F.2d 1279, 1287 (7th Cir.1980) (invalidating a union rule precluding laid-off members otherwise in good standing from voting on matters affecting their recall rights).
 
 
 11
 Local 11 argues that even though the non-translation rule may conflict with the equal participation rights of section 101(a)(1), the rule should be allowed to stand since the translation requirement was debated by the members at a number of monthly meetings and repeatedly voted down by a majority of the members in attendance. In so contending, Local 11 posits that it is not opposed to a translation requirement, and that, in fact, the union secretary attempted to declare that translation would be provided, but the members, by a majority vote, overrode the secretary's actions. Essentially, Local 11 argues that absent a showing of discriminatory conduct by union officers, the democratic process is ensured, the majority rule controls, and the courts should therefore not intervene in internal union affairs by imposing a translation requirement.
 
 
 12
 However, we believe an undemocratic rule cannot become valid because it is adopted by democratic means. See, McGinnis at 201; American Postal at 1104; Alvey at 1286. Majority rule cannot deny rights which Congress guaranteed to every union member under Title I. While we are slow to intervene into internal union affairs, see, e.g., Calhoon v. Harvey, 379 U.S. 134, 138-40, 85 S.Ct. 292, 295-96, 13 L.Ed.2d 190, 193-94 (1964); Motion Picture & Videotape Editors Guild v. International Sound Technicians, 800 F.2d 973, 975, as amended, 806 F.2d 1410 (9th Cir.1986), we cannot stand idly by and let a majority abrogate the rights of union members which Congress sought to guarantee. See 29 U.S.C. Sec. 411(b) supra; Knox County Local v. National Rural Letter Carriers' Association, 720 F.2d 936, 939 (6th Cir.1984).
 
 III.
 
 13
 Having found that the non-translation rule interferes with the protected right of equal participation, we must now decide whether the rule is reasonable under the section 101(a)(1) proviso. In determining reasonableness, we balance the undemocratic effects of the rule against the interests of protecting the union organization as an institution. United Steelworkers v. Sadlowski, 457 U.S. 102, 111-12, 102 S.Ct. 2339, 2346, 72 L.Ed.2d 707, 715-16 (1982); United Steelworkers v. Usery, 429 U.S. 305, 309-10, 97 S.Ct. 611, 614-15, 50 L.Ed.2d 502, 508 (1977); McGinnis v. Local Union 710, 774 F.2d 196, 201 (7th Cir.1985), cert. denied, --- U.S. ---- 106 S.Ct. 1638, 90 L.Ed.2d 184 (1986).
 
 
 14
 We believe the union's current rule of not providing translation services at regular membership meetings produces undemocratic effects which are not outweighed by any interest which protects the union as an institution. The rule is therefore unreasonable.[2] Given the percentage lingual makeup of the union, without translation services nearly one-half of the union members would be excluded from participatory discussion at the monthly meetings. While translation may extend the time necessary to complete the business addressed at a given meeting, lack of expediency is not a sufficient justification to uphold the non-translation rule. In fact, protection of the union as an institution is advanced by providing translation since this ensures common understanding of the discussion taking place among the attending members. See, e.g., McGinnis at 202; Knox County Local at 940. The Union therefore has a great self-interest in providing translation. Similarly, that the monthly meetings are not always well attended by the union members is also an insufficient justification for not translating. Lack of attendance by Spanish-speaking members may be the result of failure to provide translation since union members cannot be expected to consistently attend and take part in meetings in which they are unable to understand the discussion. Moreover, given the makeup of Local 11, with a nearly equal amount of English-speaking and non-English-speaking members, a single-language requirement dependent upon majority rule could change numerous times within a given year. Such an occurrence could only heighten racial tension within the union and weaken the organization as an institution. Any added expense incurred by the local union in providing a translator is similarly outweighed by the benefit the members receive in being able to fully participate in the discussion taking place.
 
 IV.
 
 15
 Zamora appeals the denial of his request for attorneys' fees. After being successful on the merits of his action, in that he was granted summary judgment, Zamora moved for attorneys' fees. The district court denied his petition by order without comment.
 
 
 16
 * An attorney's fee award is usually reviewed for abuse of discretion. Hardin v. White Mountain Apache Tribe, 779 F.2d 476, 480 (9th Cir.1985). Here, however, proper interpretation of a statute is implicated and review is de novo. Hall v. Bolger, 768 F.2d 1148, 1150 (9th Cir.1985).
 
 B
 
 17
 In Hall v. Cole, 412 U.S. 1, 9, 93 S.Ct. 1943, 1948, 36 L.Ed.2d 702, 710 (1973), the Supreme Court interpreted section 102 of the LMRDA, 29 U.S.C. Sec. 412, as allowing an award of attorneys' fees to a successful plaintiff in a Title I suit. Id. at 12, 93 S.Ct. at 1949. This interpretation is based upon the proposition that without the possibility of an award for attorneys' fees, "the individual [union] member would have to shoulder the burden of litigation and costs himself." Id. at 12, fn. 19, 93 S.Ct. at 1949, fn. 19.
 
 
 18
 Local 11 argues a fee award was properly denied because no "common benefit" was received by the entire union membership. This argument misreads Hall. Zamora's action benefits the entire membership, including English-speaking members, by facilitating discussion and participation at the monthly meetings. The requirement that Local 11 provide a translator confers a "common benefit" in that it: (1) benefits a substantial number of members other than those included in the action, (2) confers benefits upon persons who constitute an ascertainable class, and (3) allows the award of attorneys' fees to shift the costs of litigation to that class. See Rollison v. Hotel, Motel, Restaurant, Etc., 677 F.2d 741, 747-48 (9th Cir.1982) (citing Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973)); Reiser v. Del Monte Properties Co., 605 F.2d 1135, 1139 (9th Cir.1979) (citing Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973)).
 
 
 19
 We conclude that Hall entitles Zamora to attorneys' fees. We need not defer to the district court's decision denying fees because no reason for the denial was given. A district court must "clearly and concisely explain the grounds for its decision" in awarding or denying attorneys' fees. See Jordan v. Multnomah County, 799 F.2d 1262, 1265 (9th Cir.1986).
 
 V
 
 20
 The judgment of the district court is affirmed with respect to the grant of summary judgment for Zamora and the relief provided. We reverse the district court's denial of attorneys' fees and remand for appropriate relief under the discretion granted in 29 U.S.C. Sec. 412 and Hall v. Cole, 412 U.S. 1, 9, 93 S.Ct. 1943, 1948, 36 L.Ed.2d 702, 710 (1973). Plaintiffs are entitled to their costs.
 
 FARRIS, Circuit Judge, dissenting:
 
 21
 I respectfully dissent.
 
 
 22
 The right of non-English-speaking members of the union to have translation of all discussion at monthly union meetings is based on Sec. 101(a)(1) of the Labor-Management Disclosure Act. "Every member of a labor organization shall have equal rights and privileges within such organization to participate in the deliberations and voting upon the business of such meetings ..." 29 U.S.C. Sec. 411(a)(1). This is the first case in which courts have been asked to find a right to translation flowing from the general right to participate defined in Sec. 101(a)(1). Because I disagree with the majority about the nature of the right that Congress created, I must dissent.
 
 
 23
 The majority does not discuss the legislative history of the Labor-Management Disclosure Act. It considers only the language, which I agree can reasonably be read to suggest a right to translation for non-English-speaking members of the union. The history of the Act indicates, however, that Congress had a more limited purpose. The Senate Report states that the Act "is primarily designed to correct the abuses which have crept into labor and management and which have been the subject of investigation by the Committee on Improper Activities in the Labor and Management Field for the past several years." S.Rep. No. 187, 86th Cong., 1st Sess. 1, reprinted in 1959 U.S.Code Cong. & Admin.News 2318. Later comments in the Report suggest more strongly that the main purpose was to "close ... the many avenues which the criminal can devise to carry on his nefarious activity." Id. at 2321. There is no discussion in the Report of the union member's right of participation in the abstract. The right is not an independent one, but is defined as a countermeasure to the threat of corruption and other abuses by union leadership. "The Act was intended to prevent undemocratic practices in union government, including dictatorial and corrupt leadership and a disregard of the rights of the rank and file.... Congress decided that through free and democratic elections, union members could take the necessary steps to fight abuses of power by union leadership." Donovan v. Sailors' Union of the Pacific, 739 F.2d 1426, 1429 (9th Cir.1984), cert. denied, 471 U.S. 1004, 105 S.Ct. 1866, 85 L.Ed.2d 160 (1985).
 
 
 24
 When courts have considered the guarantees in Sec. 101, they have been concerned with infringements by unions or union leaders of the democratic rights of members, not with the union's failure to provide special aids for members who are hampered in their ability to participate. They have stressed the importance of the democratic principles embodied in the Act, but have always indicated that the Act's purpose is to prevent union officers from "interfering" with the exercise of democratic rights of members. Donovan, 739 F.2d at 1426. See also Amirault v. Shaughnessy, 749 F.2d 140, 144 (2d Cir.1984) (section 411(a)(1) "protects against direct infringement" of the right to vote); Mallick v. Electrical Workers, 644 F.2d 228, 235 (3d Cir.1981) ("The Bill of rights section of the Act is designed to foster democratic governance within labor unions.... In conformity with this policy, ... the members' right of free speech is given an expansive protection."); Navarro v. Gannon, 385 F.2d 512, 518 (2d Cir.1967), cert. denied, 390 U.S. 989, 88 S.Ct. 1184, 19 L.Ed.2d 1294 (1968) ("[T]he Bill of Rights was incorporated into the Act, guaranteeing each union member protection against infringement of his rights to vote, to meet, and to participate in discussions on matters of concern to him and his union."); Schuchardt v. Millwrights & Machinery Erectors, 380 F.2d 795, 797 (10th Cir.1967) ("The basic purpose of the 'bill of rights' contained in [the Act] is to assure to union members a basically democratic union organization with the concomitant protections against arbitrary and despotic control by union leaders.").
 
 
 25
 Section 101(b), 29 U.S.C. Sec. 411(b) provides that "[a]ny provision of the constitution and bylaws of any labor organization which is inconsistent with the provisions of this section shall be of no force or effect." A Union rule is inconsistent with Sec. 101(a)(1) if it works in any way to prevent or inhibit members from exercising their democratic rights. I would hold that Sec. 101 was intended to invalidate any restraints placed by the union's charter or by-laws on the members' exercise of their right of participation in union affairs. It was not intended to extend any further. It was not intended to encourage participation by imposing affirmative obligations on the union to provide, at the union's expense, translation of all discussion at monthly meetings for the benefit of non-English-speaking members.
 
 
 26
 Even if I were convinced that the union's rule against simultaneous translation at monthly meetings is inconsistent with Sec. 101(a)(1), I would find that it is a reasonable restraint on the right of equal participation. The rights and privileges guaranteed in Sec. 101(a)(1) are "subject to reasonable rules and regulations." The union has demonstrated that simultaneous translation presents considerable practical difficulties, and could inhibit discussion at membership meetings. The Supreme Court has concluded that the "critical question" under Sec. 101(a)(1) is "whether a rule that partially interferes with a protected interest is nevertheless reasonably related to the protection of the organization as an institution." Steelworkers v. Sadlowski, 457 U.S. 102, 111-12, 102 S.Ct. 2339, 2346, 72 L.Ed.2d 707 (1982). Other courts have read this language to require that they employ the same test as in Title VII cases, judging "reasonableness" as a "balance between the 'anti-democratic effects' of the challenged rule and the interests urged in its support." Alvey v. General Electric Co., 622 F.2d 1279, 1284 (7th Cir.1980). I would conclude that the burden placed upon the exercise of democratic rights of all members by the practical requirements of simultaneous translation would threaten the ability of the union to continue as an institution. The non-English-speaking members of the union are not precluded from taking English courses and providing their own simultaneous translator in the interim. The union has provided English and Spanish translation of discussion at officer nomination and contract ratification meetings. I would require no more.
 
 
 
 *
 Judge Solomon, Senior United States District Judge, District of Oregon, sitting by designation, since deceased, was a member of the panel that originally heard oral argument in this case. Judge Farris was chosen by lot to replace Judge Solomon, and has had the benefit of listening to the tapes of oral argument, as well as reading the briefs and reviewing the record in his consideration of the case
 
 
 [1]
 English and Spanish "translation" means that a bilingual person is designated as a "translator" and presides at the meeting. The translator repeats the English Comments in Spanish and the Spanish comments in English so the members can understand each other
 
 
 [2]
 We base our finding of unreasonableness upon the fact that nearly forty-eight percent of Local 11's members understand only Spanish. This linguistic makeup requires that translation be provided at union meetings. We attempt to make no determination of what bilingual or multilingual percentage makeup would automatically require translation. We therefore leave the determination of reasonableness in unions with different linqual compositions for other cases