EL RESCATE LEGAL SERVICES, INC., Central American Refugee Center, Shamila Ramin, Fereshteh Etemadi, Maria Antonia Gamero Colocho, Walter Octaviano Nochez Flores and Maria Dolores Parada, Plaintiffs,

v.

EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, David Milhollan, William R. Robie, Ernest R. Gustafson, Joseph Turnage, Immigration and Naturalization Service and Richard Thornburgh, Defendants.

No. CV 88–1201–WPG.

United States District Court, C.D. California.

Dec. 14, 1989.

**558**

Sandra Pettit, Legal Aid Found. of Los Angeles, Steven A. Nissen, Niels Frenzen, Public Counsel, Michael J. Ortiz, Darline Alvarez, Immigrants' Rights Office, Legal Aid Found. of Los Angeles, Los Angeles, Cal., for plaintiffs.

Robert L. Brosio, U.S. Atty., Frederick M. Brosio, Jr., Chief, Civ. Div., Ian Fan, Asst. U.S. Attys., Los Angeles, Cal., Stuart M. Gerson, Asst. Atty. Gen., Allen W. Hausman, Sr. Trial Counsel, Francesco Isgo, Office of Immigration Litigation Civ. Div., Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OF DECISION

GRAY, District Judge.

The plaintiffs, on behalf of themselves and their class, have moved for partial summary judgment. Plaintiffs alleged that the Executive Office for Immigration Review (hereinafter "EOIR") fails to require full interpretation of immigration court proceedings for the benefit of the alien respondents, depriving the plaintiffs and their class of the guarantees of due process under the law.[1] This matter has been briefed and argued thoroughly and was submitted to this court for decision. On November 9, 1989, this court signed an order granting the plaintiffs' motion for partial summary judgment, holding that due process requires interpretation of an entire immigration court proceeding when

1. The plaintiffs' class was certified by this court on October 24, 1988, and consists of non- or limited-English-speaking persons who currently are subject to immigration court proceedings, or will be subject to those proceedings, in the Los Angeles, San Diego and El Centro immigration courts.

2. Aliens who apply for admission are detained in the United States pending determination of their admissibility. Although these aliens are

the immigration judge concludes that an interpreter is necessary. The bases for partial summary judgment are contained in this Memorandum.

### I.

Congress has created two types of proceedings in which aliens can be denied the "hospitality" of the United States: deportation hearings and exclusion hearings (jointly referred to as "immigration court proceedings"). *Landon v. Plasencia,* 459 U.S. 21, 25, 103 S.Ct. 321, 325, 74 L.Ed.2d 21 (1982); *see generally, Leng May Ma v. Barber,* 357 U.S. 185, 187, 78 S.Ct. 1072, 1073–74, 2 L.Ed.2d 1246 (1958). In most cases, the deportation hearing is the means of proceeding against an alien already physically in the United States, while the exclusion hearing is the means of proceeding against an alien seeking admission.[2]

This court acknowledges that constitutional safeguards differ for excludable or unadmitted aliens and those aliens who have gained entry into the United States. *See, e.g., Leng May Ma,* 357 U.S. 185, 78 S.Ct. 1072; *Nishimura Ekui v. United States,* 142 U.S. 651, 659–60, 12 S.Ct. 336, 338–39, 35 L.Ed. 1146 (1892). The Supreme Court continues to hold that aliens who apply for initial admission into the United States have no constitutional rights by virtue of their application. *See, e.g., Plasencia,* 459 U.S. at 25, 103 S.Ct. at 325 (1982); *United States ex rel. Knauff v. Shaughnessy,* 338 U.S. 537, 542, 70 S.Ct. 309, 312, 94 L.Ed. 317 (1950); *Nishimura Ekui,* 142 U.S. at 659–60, 12 S.Ct. at 338–39. However, once aliens have gained entry, even if their presence is brief or illegal, a limited right to due process attaches. *Mathews v. Diaz,* 426 U.S. 67, 77, 96 S.Ct. 1883, 1890, 48 L.Ed.2d 478 (1976).

physically in the United States, their presence does not constitute an entry and has no effect on their legal status. *See Leng May Ma,* 357 U.S. at 188, 78 S.Ct. at 1074–75. This principle—the "entry doctrine" fiction—is used to avoid confining aliens needlessly while their immigration proceedings are conducted. *See Jean v. Nelson,* 727 F.2d 957, 969 (11th Cir. 1984).

Notwithstanding the judicial distinction between the rights of excludable aliens and those of deportable aliens, Congress and the Commissioner of Immigration and Naturalization have chosen to confer procedural due process rights on both classes of aliens. In deportation proceedings:

1) the alien shall be given notice, reasonable under all the circumstances, of the nature of the charges against him and of the time and place at which the proceeding will be held;

2) the aliens shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose;

3) the alien shall have a reasonable opportunity to examine the evidence against him, to present evidence in his own behalf, and to cross-examine witnesses presented by the Government;

4) no decision of deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence.

8 U.S.C. § 1252(b) (1970 & Supp.1989).

Similarly, in exclusion hearings, to which an excludable alien is entitled under 8 U.S.C. § 1226(a) (1970), the official administrative regulations require the immigration judge to:

inform the applicant of the nature and purpose of the hearing; advise him of the privilege of being represented by an attorney of his own choice at no expense to the Government, and of the availability of free legal services programs qualified under Part 292a of this chapter and organizations recognized pursuant to § 292.2 of this chapter located in the district where his exclusion hearing is to be held; and shall ascertain that the applicant has received a list of such programs; and request him to ascertain

then and there whether he desires representation; advise him that he will have a reasonable opportunity to present evidence in his own behalf, to examine and object to evidence against him, and to cross-examine witnesses presented by the Government; and place the applicant under oath.

8 C.F.R. § 236.2(a) (1989).

Although the Supreme Court held that an alien lacks constitutional rights in exclusion hearings [3] *Knauff,* 338 U.S. at 542, 70 S.Ct. at 312, this court need not address the constitutional issue since it finds a violation of the plaintiffs' statutory due process rights in both exclusion hearings and deportation hearings.

## II.

There is no genuine dispute that in the Los Angeles, San Diego and El Centro immigration courts, EOIR does not require interpretation of entire immigration court proceedings where it is determined that an interpreter is needed.[4] Instead, the practice of EOIR and of the immigration judges is to require interpretation into English of any statement made in a foreign language for the purpose of establishing a record. Other portions of the proceedings may be interpreted at the individual immigration judge's discretion. The defendants' responses to the plaintiffs' interrogatories bear this out:

RESPONSE TO INTERROGATORY NO. 15.

EOIR has no written mandated policy on what parts of the proceedings are to be interpreted. The portions of the hearings interpreted depend on what is necessary to create a record for appellate review and to assure a fair hearing.

.　　.　　.　　.　　.

*Mathews v. Diaz,* 426 U.S. at 77, 96 S.Ct. at 1890.

---

**3.** There is no doubt that aliens in deportation hearings are entitled to protections under the Constitution. As the Supreme Court stated:

There are literally millions of aliens within the jurisdiction of the United States. The Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these persons from deprivation of life, liberty, or property without due process of law.

**4.** Where an immigration judge determines that a translator is required because the respondent is non- or limited-English-speaking, *it is* EOIR's policy to provide an interpreter. Therefore, it is not necessary for this court to reach the issue of whether EOIR is required to provide interpreters.

It should be stressed that the interpreter is interpreting primarily for the benefit of the [immigration judge] and the creation of the record. The interpreter is not an agent of the respondent and is not there for the primary use of the respondent. The interpreter interprets what is necessary for a fair hearing at the discretion of the [immigration judge].

The following excerpt taken from the deposition of Chief Immigration Judge William Robie illustrates which portions of the hearings are interpreted:

Q: What is EOIR's policy regarding what portions of the proceedings are to be interpreted?

A: Our policy is that the portions of the proceeding that are related to a witness, whether it be a respondent or another witness needing language translation, will be interpreted consecutively for the record, and their primary purpose is to assure that the official record will be available for review in English.

. . . . .

Q: ... you do not interpret a witness' English testimony to Spanish for the benefit of the respondent?

A: That's correct.

Q: And why is that?

A: Because it is not needed for the function that interpreters perform in our system, which is to provide for the official record of the proceeding for review in English by the immigration judge who has to make the decision and ultimately for review by the Board of Immigration Appeals and the Court of Appeals or the District Court.

Q: What is the policy respecting the interpretation of argument of counsel?

A: There is no policy to require interpretation in that instance.

Q: And why is that?

A: It is not necessary for the official record unless it were being done by an attorney in Spanish, in which case then it would be interpreted for the record so that the judge would have the benefit of

the argument and the appellate bodies would have that benefit.

. . . . .

Q: Is it your view that there is no need to interpret objections of counsel to the respondent?

A: Yes.

Q: And what's the justification for that?

A: It is not necessary in order to have the official record be in English so that the decision-makers can adequately review it in making their decision.

Q: What about the judge's decision? Should that be interpreted to the respondent?

A: It's not necessary to do that.

[*See* Robie Deposition at 174–185].

### III.

EOIR's failure to require full interpretation of immigration court proceedings seriously undermines the plaintiffs' statutory right to be present at their proceedings, their right to counsel, their right to examine evidence, and their right to confront and cross-examine witnesses.

Foremost, failure to interpret the full proceedings deprives the class members of their right to be present. To the aliens who possess little or no comprehension of English, a proceeding conducted without an interpreter is merely a "babble of voices." *See, e.g., United States ex rel. Negron v. State of New York,* 434 F.2d 386 (2d Cir. 1970). Unless they can hear in their own language what transpires, the aliens' ability to participate in and respond to the proceedings is doubtful and their right to be present is meaningless. As Judge Ferguson succinctly stated in his dissent in *Tejeda–Mata v. INS,* 626 F.2d 721, 728 (9th Cir.1980), *cert. denied* 456 U.S. 994, 102 S.Ct. 2280, 73 L.Ed.2d 1291 (1982) "[p]resence can have no meaning absent comprehension."

In *Negron,* the defendant was physically present at his trial but did not understand English. The defendant's testimony was translated into English, but the interpreter failed to translate simultaneously the re-

mainder of the proceeding into Spanish. The Second Circuit found that the defendant was denied both the right to confront witnesses and the more fundamental right to be present at trial. *Negron*, 434 F.2d at 389. The court concluded that "[c]onsiderations of fairness, the integrity of the fact-finding process, and the potency of our adversary system of justice forbid that the state should prosecute a defendant who is not present at his own trial, unless by his conduct he waives that right." *Id.* (citations omitted). Similarly, in *Zamora v. Local 11 Hotel and Restaurant Union*, 817 F.2d 566 (9th Cir.1987), the Ninth Circuit affirmed the district court's finding that the failure of a union to translate a meeting where nearly 50 percent of the members were Spanish-speaking violated those members' statutory right to participate equally in the union meetings. Aliens who elect to attend their immigration court proceedings but are unable to hear the proceedings in their own language also constructively are denied their right to be present.[5]

Failure to interpret the entire immigration court proceedings for the benefit of the alien respondents undermines their right to counsel. Although the Ninth Circuit has consistently held that aliens in these proceedings have no sixth amendment right to the appointment of counsel, *see Castro–O'Ryan v. United States Dep't of Immigration and Naturalization*, 847 F.2d 1307, 1312 (9th Cir.1987); *Ramirez v. INS*, 550 F.2d 560, 563 (9th Cir.1977), the Circuit has "consistently emphasized the critical role of counsel in deportation proceedings. We have characterized the alien's right to counsel of choice as 'fundamental' and have warned the INS not to treat it casually. As we have also said, that right must be respected in substance as well as in name." *Baires v. INS*, 856 F.2d 89, 91 n. 2 (9th Cir.1988) (citations omitted).

Moreover, Congress has enacted a provision entitled "Right to Counsel" which provides that:

> In any exclusion or deportation proceedings before a special inquiry officer and in any appeal proceedings before the Attorney General from any such exclusion or deportation proceedings, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose.

8 U.S.C. § 1362 (1970).

The legislative history of this provision confirms that Congress wanted to confer a right. *See* H.R.Rep. No. 1365, 82d Cong., 2d Sess. 57, *reprinted in* 1952 U.S.Code Cong. & Admin.News 1653, 1712, *cited in Castro–O'Ryan*, 847 F.2d at 1312. A similar provision was promulgated in the regulations applicable to proceedings before an immigration judge. *See* 8 C.F.R. § 3.15(b) (1989).

The inability to comprehend immigration court proceedings also seriously impairs aliens' ability to interact with counsel and assist in their own defense. Suppose that counsel unwittingly makes a mistake or misrepresents a fact of which the alien has knowledge—not an unusual occurrence in this court's experience. Without the benefit of an interpreter, this error would go uncorrected and well might determine the outcome of the proceedings and deprive the alien of a deserved appeal.

Just as the lack of translation renders meaningless the plaintiffs' right to counsel, it equally affects their right to confrontation and cross-examination of witnesses. Aliens cannot assist their counsel in cross-examination of witnesses brought against them if they cannot understand what a witness is saying. As one court recognized, a non-English-speaking individual's "incapacity to respond to specific testimony would inevitably hamper the capacity of his counsel to conduct effective cross-examina-

---

5. Defense counsel states that "even if assuming that everything would be interpreted, it's unclear whether the aliens would—and most of them are from poor communities—that they would really understand the meaning of what is happening in the immigration hearing." [11/6/89 Transcript, 17:13–17]. This court finds counsel's inference condescending and indicative of the defendants' lack of respect for the plaintiffs' class.

tion. Not only for the sake of effective cross-examination, however, but as a matter of simple humaneness, [the defendant] deserved more than to sit in total incomprehension as the trial proceeded." *Negron,* 434 F.2d at 390.

### IV.

Statutory due process rights aside, hearings such as these ought to be fair.[6] The Board of Immigration Appeals ("BIA") has acknowledged that an alien in an exclusion or deportation proceeding is entitled to a fair hearing. *Matter of Exilus,* 18 I. & N. 276 (BIA 1982). Yet without full interpretation, an immigration hearing necessarily is unfair to the respondent alien who cannot understand what is going on.

Courts increasingly have recognized the role of interpreters in ensuring the fairness of proceedings involving non-English-speaking respondents. In *Niarchos v. INS,* 393 F.2d 509 (7th Cir.1968), the Seventh Circuit ruled that the petitioner was precluded from challenging the validity of his deportation order because he had left the United States after the order was issued. However, the court recognized in dictum that the failure to translate the proceedings constituted a *per se* violation of due process:

> We think that the absence of an interpreter at the 1962 hearing is contrary to the aim of our law to provide fundamental fairness in administrative proceedings. Despite the essential discretionary power of the Immigration officials in dealing with violations of the crewman provision ... it would seem clearly not within the Service's discretion to conduct an official inquiry, without an interpreter, in a language the subject of the inquiry can neither understand nor speak. We therefore in this dictum express the

hope that should petitioner seek permission to re-enter, ... the Attorney General will consider the petition in the light of the shocking circumstances of the 1962 deportation hearing.

*Id.* at 511.

In *Tejeda–Mata,* 626 F.2d at 726, the Ninth Circuit held that where an official interpreter was present at the hearing in order to translate petitioner's own testimony and petitioner's counsel offered to assist if necessary, the immigration judge's denial of the request for simultaneous translation of one witness' testimony was plainly improper. The court went on to say that:

> Faced with such an abuse of discretion, this court would, as a general rule, feel compelled to reverse and remand this case for a new hearing. Limited to the specific circumstances of this case, however, including, in particular, the fact that the untranslated testimony only confirmed petitioner's own admission of alienage, we conclude, albeit reluctantly, that the Immigration Judge's error was harmless and that a new hearing would be no more than a futile gesture.

*Id.* at 726–27.

Despite the majority's application of the harmless error standard, *Tejeda–Mata* still holds that an interpreter is important to the fundamental fairness of immigration hearings. *Id.; see also, Matter of Tomas,* 19 I. & N. Dec. ——. Interim Decision No. 332, (BIA 1987); *Gonzales v. Zurbrick,* 45 F.2d 934 (6th Cir.1930).

The need to ensure intrinsic fairness in immigration proceedings is magnified where aliens seek political asylum from persecution in their homelands.[7] In such cases, errors stemming from lack of translation may lead to the alien's return to

---

**6.** This court is acutely aware of the fact that a deportation or exclusion matter is of extreme importance to the alien involved. As the Supreme Court observed:

> Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom. That deportation is a penalty—at times a most serious one—cannot be doubted. Me-

ticulous care must be exercised lest the procedure by which he is deprived of that liberty not meet the essential standards of fairness. *Bridges v. Wixon,* 326 U.S. 135, 154, 65 S.Ct. 1443, 1452–53, 89 L.Ed. 2103 (1945).

**7.** Political asylum is available in both deportation and exclusion hearings. *See* 8 U.S.C. § 1253(h) (1970 & Supp.1989) and 8 C.F.R. § 236.3 (1989).

persecution. The Ninth Circuit has reiterated that "[i]t is particularly important that an applicant for relief under section 243(h) [political asylum] have a reasonable opportunity to present his proofs, for the stakes are high." *Kovac v. INS*, 407 F.2d 102, 108 (9th Cir.1969). For example, in *Kovac*, the Ninth Circuit ordered a reopening of the alien's case because the court had "grave doubt" that the hearing had been conducted to meet the standards of due process. The alien had not been represented by counsel and did not know enough English to "fully understand the nature of the proceedings or the meaning of the questions asked, and was unable, under the trial attorney's questioning, to convey the full basis of his fear of persecution." *Id.*

Similarly, the Second Circuit reversed a lower court's denial of a petition for writ of habeus corpus, finding that if the alien had "understood English, he would have realized that his asylum application did not state his true claim. This in turn might well have induced him to place his complete claim on the record, particularly if he had understood that this was the final hearing and his last opportunity to substantiate his claim." *Augustin v. Sava*, 735 F.2d 32, 38 (2d Cir.1984).

### V.

The defendants balk at full interpretation of immigration court proceedings for a number of reasons. First, they argue that if an alien is represented by counsel the need for translation is mitigated, particularly where the counsel speaks the client's language. However, given that part of the proceeding invariably will involve counsel's participation, it would be impossible for the attorney to speak and translate at the same time. Nor is there reason to believe that all members of the class will be represented by counsel, or that those who are represented will have attorneys who speak their language fluently. The defendants' observation that three out of the five class representatives had counsel who spoke Spanish provides little assurance for the entire class. More toward the heart of the matter, an attorney should not have to wear two hats in order to ensure statutory due process and fundamental fairness. Such a requirement would serve to disadvantage the alien whose attorney must translate proceedings while at the same time zealously represent the client. *See, e.g., People v. Mata Aguilar*, 35 Cal.3d 785, 791 n. 5, 200 Cal.Rptr. 908, 911 n. 5, 677 P.2d 1198, 1201 n. 5 (1984).

Second, where aliens are not represented by counsel, the defendants assure the court that the current policy is to interpret the entire proceeding. Although this may be the policy of the BIA, this court is not convinced it has filtered down to the immigration judges. According to the testimony of those judges and the immigration court interpreters, the full proceedings are rarely interpreted, even when the alien is without representation.

The defendants claim that if the entire proceedings were interpreted, additional immigration judges and support staff would be needed at a substantial increase in expenditures. Yet, it is not apparent to this court, nor do the defendants disclose, why administrative costs should increase simply because an interpreter, who is already present at the proceeding for the immigration judge's purposes, interprets the full hearing. There should be no increase in cost or delay if the translation is done simultaneously, as is the practice in most federal and criminal cases. *See, e.g.*, Court Interpreters Act, 28 U.S.C. § 1827(k) (Supp.1989).

This court is appalled by the apparent lack of concern which EOIR and the immigration judges have demonstrated for the rights of the alien respondent. Fundamental fairness and procedural due process appear to have taken a back seat to administrative convenience and bureaucratic guidelines. Given the present position and practice of EOIR and the immigration judges, this court cannot conclude that the due process rights of the plaintiffs should be a matter of discretion. Only when the entire hearing is translated will those rights be

secure.[8]

## VI.

There is a final issue which was raised only briefly by the parties but requires some clarification. The plaintiffs allege causes of action under the Immigration and Nationality Act ("INA") and the Administrative Procedure Act ("APA"). The defendants assert that the APA is not applicable to deportation and exclusion hearings, citing *Marcello v. Bonds*, 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107 (1955). The Ninth Circuit recently explained how the INA and the APA interact in light of the *Marcello* opinion:

> The [*Marcello*] Court examined both statutes and concluded that when Congress drafted the hearing provisions of the INA it used the APA as a model, drawing on the APA provisions and "adapting them to the particular needs of the deportation process." But *Marcello* did not hold that deportation proceedings are excluded or exempted from section 554. In fact, immigration proceedings are covered by the APA. *Marcello,* while it used the word "exemption," held only that the INA "supercedes" the hearing provisions of the APA—that is, that when the two statutes diverge, the more specialized hearing provisions of the INA govern.

> Moreover, the discrepancy between the INA and the APA that the *Marcello* Court found critical has since been eradicated.... The hearing provisions of the INA and the APA are now fundamentally identical. There is therefore no question that the deportation process conforms to the APA's requirements and constitutes an adversary adjudication as defined under the APA.

*Escobar Ruiz v. INS,* 838 F.2d 1020, 1025 (9th Cir.1988) (citations omitted). Accordingly, partial summary judgment is granted as to the plaintiffs' first cause of action, brought under the INA, and their third cause of action, brought under the APA,

finding that due process requires interpretation of an entire immigration court proceeding when an immigration judge concludes that an interpreter is needed.

---

**8.** This court is mindful that its holding conflicts with the BIA's decision in *Matter of Exilus,* 18 I. & N. 276 (BIA 1982) which held that due process does not require translation of the entire hearing. For the reasons given in this opinion, this court cannot agree.