941 F.2d 950
 60 USLW 2141
 EL RESCATE LEGAL SERVICES, INC.; Central American Refugee
Center; Shamila Ramin; Fereshteh Entemadi, et
al., Plaintiffs-Appellees,
v.
EXECUTIVE OFFICE OF IMMIGRATION REVIEW; David Milhollan;
William R. Robie; Robert M. Moschorak, et al.,
Defendants-Appellants.
 No. 90-55292.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 10, 1991.
Decided Aug. 12, 1991.
 
 Francesco Isgro, Office of Immigration Litigation, Washington, D.C., for defendants-appellants.
 Lee A. O'Connor, San Fernando Valley Neighborhood Legal Services, Pacoima, Cal., and Linton Joaquin, National Immigration Law Center, Los Angeles, Cal., for plaintiffs-appellees.
 Maureen B. Callahan, Salem, Or. and Richard J. Higgins, Washington, D.C., for amici curiae.
 Appeal from the United States District Court for the Central District of California.
 Before BEEZER, CYNTHIA HOLCOMB HALL and TROTT, Circuit Judges.
 BEEZER, Circuit Judge:
 
 
 1
 The district court granted Plaintiffs' request for a permanent injunction requiring full interpretation of all immigration court proceedings on the ground that partial interpretation violates rights established by the Immigration and Naturalization Act. The Executive Office of Immigration Review appeals, arguing that the district court had no jurisdiction to consider Plaintiffs' claims and that the court erred on the merits. We hold that the district court did have jurisdiction, and we reverse and remand for consideration of Plaintiffs' constitutional claims.
 
 
 2
 * Plaintiffs brought a class action on behalf of all non- and limited-English-speaking individuals who currently are or will be subject to immigration court proceedings in the Los Angeles, El Centro and San Diego immigration courts. El Rescate Legal Servs., Inc. v. EOIR, 727 F.Supp. 557, 558 n. 1 (C.D.Cal.1989). Their complaint alleged that the Executive Office for Immigration Review (EOIR)[1] engages in a policy and practice of using incompetent translators and of not interpreting many portions of immigration court hearings.[2] The complaint alleged that this practice deprived class members of their statutory rights to present evidence, to cross-examine witnesses, and to be represented and effectively assisted by retained counsel. The complaint alleged further that the same policy and practice violates the due process and equal protection guarantees of the Fifth Amendment to the U.S. Constitution. Finally, the complaint alleged a violation of the Administrative Procedure Act (APA).
 
 The district court concluded that
 
 3
 EOIR's failure to require full interpretation of immigration court proceedings seriously undermines the plaintiffs' statutory right to be present at their proceedings, their right to counsel, their right to examine evidence, and their right to confront and cross-examine witnesses.
 
 
 4
 Id. at 560. For the same reasons, the court concluded that the EOIR policy violated the APA. Id. at 564. The court granted summary judgment in favor of Plaintiffs and permanently enjoined the EOIR "from failing to provide for interpretation of the entire proceedings in immigration court when an immigration judge concludes that an interpreter is required for non- or limited-English speaking class members."[3] The EOIR appeals this judgment.[4]
 
 II
 
 5
 The EOIR argues that the district court did not have jurisdiction to entertain Plaintiffs' suit because Plaintiffs did not exhaust their administrative remedies. The EOIR claims that both statutory and prudential considerations require exhaustion before a federal court may address Plaintiffs' claims. We review a question of subject matter jurisdiction de novo. Montes v. Thornburgh, 919 F.2d 531, 534 (9th Cir.1990) (citation omitted).
 
 
 6
 "When a statute requires exhaustion, a petitioner's failure to do so deprives this court of jurisdiction." Reid v. Engen, 765 F.2d 1457, 1462 (9th Cir.1985) (citation omitted). The Immigration and Naturalization Act (INA) establishes review by the courts of appeals as the exclusive means of reviewing final orders of deportation. 8 U.S.C. § 1105a(a) (1988). Final orders of exclusion may be reviewed only in a habeas corpus proceeding. Id. § 1105a(b). "An order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations." Id. § 1105a(c).
 
 
 7
 The statutory exhaustion requirement of section 1105a(c) is coextensive with the exclusivity provision of section 1105a(a). Montes, 919 F.2d at 537. Therefore, exhaustion of administrative remedies is statutorily required only if appellees are seeking to attack a final order of deportation or exclusion.
 
 
 8
 We have joined a number of other circuits in drawing a distinction between jurisdiction to rule on the merits of an individual deportation order and jurisdiction to rule on an alleged pattern and practice of constitutional or statutory violations. See Montes, 919 F.2d 531; National Center for Immigrants' Rights, Inc. v. INS (NCIR III), 913 F.2d 1350, 1352 (9th Cir.1990), cert. granted in part, --- U.S. ----, 111 S.Ct. 1412, 113 L.Ed.2d 465 (1991); National Center for Immigrants' Rights, Inc. v. INS (NCIR I), 743 F.2d 1365, 1368-69 (9th Cir.1984); see also Salehi v. District Director, INS, 796 F.2d 1286, 1290 (10th Cir.1986); Haitian Refugee Center v. Smith, 676 F.2d 1023, 1032-33 (5th Cir.1982), overruled on other grounds, Jean v. Nelson, 727 F.2d 957 (11th Cir.1984); Jean v. Nelson, 727 F.2d 957, 979-80 (11th Cir.1984) (statutory as well as constitutional questions), aff'd, 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985).
 
 
 9
 In Montes, a class of asylum applicants brought suit in district court for injunctive relief regarding requirements for filing for asylum. We determined that we did not have exclusive jurisdiction under section 1105a(a) and therefore that exhaustion was not required. 919 F.2d at 534-38. We adopted the distinction, first drawn by the Eleventh Circuit, between
 
 
 10
 the exclusive jurisdiction of the courts of appeal under Section 1105a to review "alleged procedural irregularities in an individual deportation hearing to the extent these irregularities may provide a basis for reversing an individual deportation order " [and] "the authority of a district court to wield its equitable powers" when confronted with "a program, pattern or scheme by immigration officials to violate the constitutional rights of aliens." [Haitian Refugee Center ], 676 F.2d at 1033 (emphasis in original).
 
 
 11
 Montes, 919 F.2d at 535. We concluded that the district court had jurisdiction over the claim because the "appellees were not seeking to set aside individual deportation orders, but to obtain injunctive and declaratory relief to protect the rights of a class." Id. at 536.
 
 
 12
 The Supreme Court recognized a similar distinction in INS v. Chadha, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983), in which an alien petitioned this court for review of his deportation order, arguing that a provision of the INA allowing either the Senate or the House of Representatives unilaterally to invalidate the Attorney General's suspension of his deportation was unconstitutional. The Supreme Court held that the alien properly appealed directly to the court of appeals. In reaching its conclusion, the Court distinguished Chadha, in which the alien "directly attack[ed] the deportation order itself, and the relief he [sought]--cancellation of deportation--[was] plainly inconsistent with the deportation order," id. at 939, 103 S.Ct. at 2778, from a case such as the one before us, in which the alien "did not attack the deportation order itself but instead [sought] relief not inconsistent with it." See id. at 938, 103 S.Ct. at 2777 (citing Cheng Fan Kwok v. INS, 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968)).
 
 
 13
 The plaintiffs in the present case do not challenge the validity of any deportation or exclusion order or of any ruling in an immigration proceeding. They challenge instead the failure of the INS to require translation of all exclusion or deportation proceedings in their entirety. As in Montes, "the relief ... sought [is] not inconsistent with a valid deportation order, because if appellees prevailed they 'would gain only the right to remain in this country so long as it took the Attorney General to rule' " on their eligibility to be admitted into or to remain in the United States. See Montes, 919 F.2d at 536 (quoting Salehi, 796 F.2d at 1291; citing Cheng Fan Kwok, 392 U.S. at 213, 88 S.Ct. at 1974); see also NCIR III, 913 F.2d at 1352 ("The district court had jurisdiction since [plaintiffs] challenged the blanket provision on constitutional and statutory grounds and did not seek a review on the merits of any individual determination."). Because the appellees do not challenge final orders of deportation or exclusion, they are not required by statute to exhaust administrative remedies.
 
 
 14
 The EOIR urges us to require exhaustion even if we find no statutory requirement. In the absence of a statutory mandate, we have applied a prudential exhaustion requirement in cases in which:
 
 
 15
 (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.
 
 
 16
 Montes, 919 F.2d at 537 (quoting United States v. California Care Corp., 709 F.2d 1241, 1248 (9th Cir.1983)).
 
 
 17
 In the present case, as in Montes, "[f]urther development of the record is not necessary ... because the appellees raise legal issues not within the particular expertise of the Attorney General." Id. With regard to the second consideration, "[r]elaxing the exhaustion requirement would not significantly encourage bypassing the administrative process because the district court will have jurisdiction only in the rare case alleging a pattern or practice violating the rights of a class of applicants." Id.
 
 
 18
 Regarding the third factor, this court has required exhaustion where the BIA, if allowed to address the claims first, might "take action that would render unnecessary our consideration of constitutional issues." Dhangu v. INS, 812 F.2d 455, 460 (9th Cir.1987). However, there is no requirement of exhaustion where resort to the agency would be futile. SAIF Corp./Oregon Ship v. Johnson, 908 F.2d 1434, 1441 (9th Cir.1990). Thus, where the agency's position on the question at issue "appears already set," and it is "very likely" what the result of recourse to administrative remedies would be, such recourse would be futile and is not required. Id.; see also Mathews v. Eldridge, 424 U.S. 319, 330, 96 S.Ct. 893, 900, 47 L.Ed.2d 18 (1976) (Even where the administrative agency has the authority to change the challenged procedures, exhaustion is not necessary when "[i]t is unrealistic to expect that the [agency] would consider substantial changes in the current administrative [procedures] at the behest of a single [applicant] raising a constitutional challenge in an adjudicatory context.").
 
 
 19
 The BIA has announced and reaffirmed its policy regarding translation of immigration proceedings, and its understanding of the requirements of the due process clause. See Matter of Exilus, 18 I & N Dec. 276, 280-81 (BIA 1982); Matter of Tomas, Interim Dec. # 3032 (BIA Aug. 6, 1987) ("[A]ll of the hearing need not be translated for the hearing to be fair.... See Matter of Exilus."). It would therefore be unrealistic to require Plaintiffs to exhaust their administrative remedies before bringing their claims.
 
 
 20
 The EOIR's final jurisdictional argument is that the organizational plaintiffs lack standing. Plaintiffs correctly note that the issue is moot because the scope of the injunction is no broader than it would have been had the class members been the only plaintiffs. Furthermore, the organizational plaintiffs have alleged sufficient injury to the organizations to support standing.
 
 
 21
 In Havens Realty Corp. v. Coleman, 455 U.S. 363, 379, 102 S.Ct. 1114, 1124, 71 L.Ed.2d 214 (1982), the Supreme Court held that where the defendants' "practices have perceptibly impaired [the organizational plaintiff's] ability to provide [the services it was formed to provide] ... there can be no question that the organization suffered injury in fact." The organizations involved in the present case were established to assist Central American refugee clients, most of whom are unable to understand English, in their efforts to obtain asylum and withholding of deportation in immigration court proceedings. The allegation that the EOIR's policy frustrates these goals and requires the organizations to expend resources in representing clients they otherwise would spend in other ways is enough to establish standing. See id. at 379, 102 S.Ct. at 1124.
 
 III
 
 22
 The EOIR argues that we must defer to the BIA policy expressed in Exilus and Tomas because the policy represents the INS's construction of the statutes it is entrusted to administer. See Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) ("[C]onsiderable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer."). However, the BIA policy regarding translation has been enunciated only in terms of the requirements imposed by the due process clause; the BIA has not addressed the requirements created by the INA. See Exilus, 18 I & N Dec. 276; Tomas, Interim Dec. # 3032.
 
 
 23
 Furthermore, Plaintiffs' argument is not that the policy is an abuse of the BIA's discretion, but rather that the INA requires that immigration proceedings be interpreted in their entirety where the alien does not understand English, and therefore that the EOIR and the BIA have no discretion in this regard. Therefore, the issue addressed by the district court, and now before us, is solely one of statutory interpretation and must be considered de novo. See INS v. Cardoza-Fonseca, 480 U.S. 421, 445-48, 107 S.Ct. 1207, 1220-22, 94 L.Ed.2d 434 (1987) (although deference appropriate where an agency applies a statute to particular facts, questions of pure statutory construction are for the courts to decide); see also Briggs v. Sullivan, 886 F.2d 1132, 1144-45 (9th Cir.1989) (no deference due where Plaintiffs did "not contend that the Secretary's discretionary judgment was wrong; they claim[ed] he has no discretion under the statute to make any judgment in the first place.").
 
 
 24
 Aliens must have a "reasonable opportunity to be present" at their deportation proceedings. 8 U.S.C. § 1252(b) (1988). In both exclusion and deportation proceedings, an alien has "the privilege of being represented (at no expense to the Government), by such counsel ... as he shall choose." Id. § 1362; see also id. § 1252(b)(2) (deportation hearings); 8 C.F.R. § 236.2 (1990) (exclusion). An alien must also be given a reasonable opportunity to examine the evidence against him, to present evidence in his own behalf, and to cross-examine witnesses presented by the Government. See 8 U.S.C. § 1252(b)(3) (deportation); 8 C.F.R. § 236.2 (exclusion). The district court concluded that the "EOIR's failure to require full interpretation of immigration proceedings seriously undermines" the rights created by these provisions. El Rescate, 727 F.Supp. at 560.
 
 
 25
 We disagree. These provisions require only that aliens be given a "reasonable opportunity " to be present, to examine and present evidence, and to cross-examine witnesses, and be allowed to provide their own representation. See 8 U.S.C. §§ 1252(b), 1362; see also 8 C.F.R. § 236.2 (1990). Even where an alien's presence can be meaningful only through the assistance of a translator, the alien's right to a reasonable opportunity to be present is not undermined if she also has a reasonable opportunity to provide her own translator. The same is true of the other statutory requirements. Because Plaintiffs have not shown that they cannot provide their own translators, or that they have been prevented from doing so, the EOIR's refusal to provide full translation does not deny them a reasonable opportunity to exercise their statutory rights. Cf. Maldonado-Perez v. INS, 865 F.2d 328, 335 (D.C.Cir.1989) ("An immigration judge simply cannot be responsible for ensuring the presence of an alien or his counsel ... when the alien has a reasonable opportunity to be present."); United States v. Dekermenjian, 508 F.2d 812, 814 (9th Cir.1974) ("When one voluntarily chooses not to attend a deportation hearing which may affect him adversely, he is hardly in a position to complain that an Order made pursuant to the hearing is invalid because of his absence.").
 
 IV
 
 26
 Plaintiffs also claimed before the district court that the BIA's translation policy violates their rights to due process and equal protection of the laws. Because the district court did not address this claim, we refuse to resolve it on appeal and we remand for consideration by the district court.
 
 V
 
 27
 The district court granted summary judgment "as to the plaintiffs' ... third cause of action, brought under the APA." 727 F.Supp. at 564. Plaintiffs rely on 5 U.S.C. § 702 (1988). Section 702 does not create substantive rights. There is no right to sue for a violation of the APA in the absence of a "relevant statute" whose violation "forms the legal basis for [the] complaint." See Lujan v. National Wildlife Fed'n, --- U.S. ----, 110 S.Ct. 3177, 3185-86, 111 L.Ed.2d 695 (1990); 5 U.S.C. § 702. Because the EOIR policy does not violate the INA, there can be no APA violation.
 
 VI
 
 28
 The district court's grant of summary judgment and its order enjoining the EOIR from failing to provide interpretation of immigration proceedings in full are REVERSED. The case is REMANDED to the district court for consideration of the constitutional claims. Plaintiffs have not prevailed, and their request for attorney's fees is accordingly DENIED. See 28 U.S.C. § 2412 (1988).
 
 
 
 [1]
 The EOIR is the federal agency responsible for supervising the Office of the Chief Immigration Judge and the Board of Immigration Appeals. See 8 C.F.R. § 3.0 (1990)
 
 
 [2]
 The Board of Immigration Appeals (BIA) has determined that
 [a]lthough an alien in exclusion or deportation proceedings is entitled to a fair hearing, we do not find that due process requires translation of the entire hearing. In most cases, all that need be translated are the immigration judge's statements to the alien, the examination of the alien by his counsel, the attorney for the Service, and the immigration judge, and the alien's responses to their questions. However, the immigration judge may determine, in the sound exercise of his discretion, that the alien's understanding of other dialogue is essential to his ability to assist in the presentation of his case. For example, where a witness testifies regarding factual matters which specifically relate to the alien's own testimony, effective cross-examination may necessitate translation of the witness's testimony. On the other hand, arguments presented by counsel and the rulings of the immigration judge are primarily legal matters, the translation of which generally would not be required where the alien is represented and the protection of his interests is ensured by counsel's presence.
 Matter of Exilus, 18 I & N Dec. 276 (BIA 1982).
 
 
 [3]
 The court also ordered that class members be allowed to "waive their right to have all portions of immigration court proceedings interpreted. However, such waiver will only be effective after the immigration judge has determined, on the record, that such waiver was made in a knowing, intelligent, and voluntary manner."
 
 
 [4]
 The issue of competent interpretation remains before the district court