MATTER OF BANJEGLAV

In DEPORTATION Proceedings

A-15804394

*Decided by Board August 28, 1963*

Respondent, a 27-year-old Yugoslav crewman, has not established that because
he deserted his vessel he will be subject to physical persecution within the
meaning of section 243(h), Immigration and Nationality Act, if deported to
Yugoslavia, since the penalties for such desertion are reprimand, fine and loss
of wages earned (but ordinarily not jail.)

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant
(crewman)—remained longer.

On April 29, 1963, the special inquiry officer, after finding that the
respondent had failed to establish that he would be subject to physical
persecution if deported to Yugoslavia, authorized the privilege of
voluntary departure for him, with the provision for his deportation
to Sweden, alternatively to Yugoslavia, on the charge contained in
the order to show cause in the event of his failure to so depart. The
appeal from that decision, which brings the case before this Board
for consideration, will be dismissed.

The record relates to a 27-year-old male alien, a native and citizen
of Yugoslavia, who last entered the United States on or about Sep-
tember 21, 1962. He was then admitted as a crewman for the period
of time his vessel was to remain in port, but in no event to exceed
29 days. He has remained in this country since the expiration of the
temporary period of his admission without authority. Accordingly,
his deportability on the above-stated charge is established. It is also
conceded.

The special inquiry officer has granted the respondent's request for
voluntary departure. In this connection, the respondent has testified
that he has never been arrested or had any difficulty with the police.
There is no evidence of record indicating that he has been other than
a person of good moral character during the past five years. He is

married to a naturalized citizen of the United States, who testified in his behalf in the course of the deportation proceedings. The record confirms the respondent's testimony that he surrendered himself voluntarily to the Immigration Service. He has asserted that he is ready and willing to leave the United States at his own expense rather than be deported. The special inquiry officer was satisfied that, if faced with the alternative of deportation, the respondent would depart from the United States to some country of his choice. For these reasons, we agree with the special inquiry officer that voluntary departure is merited in these premises. His action in this respect, therefore, is affirmed.

The only issue remaining to be resolved here is whether the respondent has met the burden resting upon him in this proceeding of establishing that he would be subjected to physical persecution if deported to Yugoslavia. For the reasons hereinafter stated, we find that he has not. Therefore, the appeal will be dismissed.

Generally speaking, physical persecution, the likelihood of which authorizes a stay of deportation under this section of the law, means confinement, torture, or death inflicted on account of race, religion or political viewpoint.[1] The main thrust of respondent's argument here, ignoring the questions of race and religion, is that he will be subjected to persecution because of his political viewpoint. In essence, his claim is that he has openly expressed opposition to communism, Yugoslav style, by persistently refusing to join the party; and, at least on his last four voyages, by discussing with fellow crew members the good points of the capitalistic system and the weaknesses of dictatorships. We, however, agree with the special inquiry officer that the record, showing that respondent was able to speak as he did and resist all overtures to join the Party, without detriment to his career, does not support the respondent's position.

For about three years prior to becoming a crewman, respondent was an office worker, sailed on a small river boat, and served in the Yugoslav navy. After his discharge, he sailed as a cadet officer for two years, and then took an examination for the merchant marine. He was qualified for this by the training he had received in the naval academy. During his years as a crewman, he rose to the position of second navigating officer.

In our opinion the respondent's progress careerwise, as set forth above, belies any claim to persecution because of opposition to communism. As a matter of fact, respondent has testified that the worst that would happen to him for his refusal to join the Party and his viewpoint

---

[1] *Blazina v. Bouchard*, 286 F.2d 507 (C.A. 3, 2/2/61).

would be assignment to ships destined to the Indian Ocean, and denial of scholarships for higher education. .

It also has been judicially determined that economic proscription so severe as to deprive a person of all means of earning a livelihood may amount to physical persecution.[2] However, the respondent concededly does not base his claim to physical persecution on utilitarian sanctions. In his own words: "He was doing rather well for himself at the time he jumped ship and gave up a career with considerable potential * * *."[3] This aspect of the case, then, speaks for itself and requires no further comment.

It has further been ruled that imprisonment for illegally deserting a vessel is a criminal sanction reconcilable with generally accepted concepts of justice, and not physical persecution within the purview of this section of the law.[4] The court later modified this ruling, however, to the extent of holding that an alien threatened with long years of imprisonment, perhaps even a life sentence, for attempting to escape a communist dictatorship would be entitled to a stay of deportation on the ground of physical persecution.[5] And still subsequently it decided that possible incarceration for one (1) or two (2) years resulting from illegally deserting a ship is not physical persecution.[6]

In our opinion, the facts of this record, applied in the light of the foregoing precedents, do not call for reversal of the special inquiry officer. The respondent has submitted an affidavit[7] by a qualified expert on Yugoslav law.[8] Specifically, the affidavit points out (p. 4) that the abandonment of his ship by a Yugoslav crewman is, theoretically, a disciplinary offense punished pursuant to Article 48 of the "Decree Concerning the Crews of the Merchant Marine of September

---

[2] *Dunat* v. *Hurney*, 297 F.2d 744 (C.A. 3, 1/24/62).

[3] 1st two sentences, last ¶, p. 6—Brief on Appeal.

[4] *Diminich* v. *Esperdy*, 299 F.2d 244 (C.A. 2, 12/29/61); cert. den. 4/9/62—82 S. Ct. 875.

[5] *Sovich* v. *Esperdy*, 31 L.W. 2585, 13 Ad. L. 2d 619 (C.A. 2, 5/15/63).

[6] *Zupicich* v. *Esperdy*, C.A. 2, 6/28/63, 319 F.2d 773.

[7] Exhibit 3.

[8] Branko M. Peselj, Esq.—member of the Yugoslav bar and a practicing attorney in that country (1931—1945)—research assistant, Free Europe, Inc., in charge of the office of the Library of Congress working on various international, legal, social and political problems (1950—1955)—member of D.C. bar and local practicing attorney (since 1955)—special attorney, U.S. Dept. of Justice, Office of Alien Property, Foreign Law Section (1956—1958)—USIA, Voice of America, Yugoslav Service (present)—Adjunct Professor of Law, Georgetown Univ., lecturing on Socialist Law and the Socialist Legal System (present)—publisher of, *inter alia*, THE SOCIALIST CHARACTER OF YUGOSLAV LAW, "Review" Vol. 1, No. 2, London, 1961; and "Contemporary Croatia in the Yugoslav Federation: Its Constitutional Status and Socioeconomic Position," Journal of Croatian Studies, Vol. 11 (1961) pp. 80–133.

17, 1949." It further sets forth that the penalties for such desertion thereunder are reprimand, fine, and loss of earned wages, but ordinarily not jail. This, certainly, does not support a claim of possible long imprisonment for "jumping ship."

Respondent's attempts to nevertheless bring himself within the scope of the *Sovich case* (⁵, *ante*), on the theory that his conduct aboard ship, as hereinbefore described, would bring him within Article 118 of the Yugoslav Code of Criminal Procedure providing for imprisonment up to 12 years in the case of a person who "represents the social political conditions in the country maliciously and untruthfully," is mere conjecture on his part. The success of his career as a merchant mariner, as outlined above, deprives such an assumption of any validity whatsoever. As a matter of fact, as indicated previously, he has himself stated that the worst that could happen to him would be assignment to ships destined to the Indian Ocean and the denial of scholarships for higher education.

Finally, on this point, the respondent was not persecuted during all the years that he lived in Yugoslavia or served aboard its ships. His mother and sister still live in Yugoslavia and no showing has been made that they have been subjected to physical persecution either. Again, these matters speak for themselves.

Actually, what the respondent seeks on appeal is a delay in the time for his voluntary departure until he can legalize his status by taking advantage of a nonquota visa petition filed by his citizen wife and approved by the Service on May 20, 1963.⁹ In effect, then, the respondent desires an extension of the time for his voluntary departure. But this is a matter properly for the consideration of the District Director having jurisdiction over respondent's place of residence, not this Board. Accordingly, and in view of the foregoing, the special inquiry officer's decision of April 29, 1963, is hereby approved.

**ORDER:** It is ordered that the appeal be and the same is hereby dismissed.

---

⁹ He asserts that immigration procedures via the United States Embassy in Dublin, Ireland, have been initiated.