Djordje KOVAC, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE, John P. Boyd, District Director, Seattle, Washington, Respondent.**

No. 21913.

United States Court of Appeals
Ninth Circuit.

Jan. 29, 1969.

John P. Boyd, Dist. Director, I. N. S., Seattle, Washington, Cecil F. Poole, U. S. Atty., Stephen M. Suffin, I. N. S., San Francisco, Cal., for respondent.

Before HAMLEY, JERTBERG, and BROWNING, Circuit Judges.

**BROWNING, Circuit Judge:**

This is a petition for review of a final order of deportation. 8 U.S.C. § 1105a (1964). We remand for further proceedings.

Petitioner, a native and citizen of Yugoslavia, entered the United States on February 13, 1967, as a non-immigrant crewman on shore leave from a Yugoslavian vessel. 8 U.S.C. §§ 1101(a) (15) (D) and 1282(a) (1) (1964). His ship departed on February 21, but petitioner remained. He concedes that he is deportable. 8 U.S.C. § 1251(a) (2) (1964).

At his deportation hearing, held on March 6, 1967, petitioner expressed a desire to apply for a temporary stay of deportation under section 243(h) of the Immigration and Nationality Act, 8 U.S.C. § 1253(h), which, as amended October 3, 1965, Pub.L. 89–236, § 11(f), 79 Stat. 918, authorizes the Attorney General to withhold deportation to any country in which "the alien would be subject to persecution on account of race, religion, or political opinion."

The deportation hearing was brief, consisting almost entirely of an examination of petitioner by government counsel through an interpreter—petitioner did not speak English and was not represented by counsel. At the conclusion of the hearing the special inquiry officer dictated an opinion denying relief under section 243(h) (although no formal application had been filed) and ordering petitioner deported. The special inquiry officer denied petitioner's motion to reopen and reconsider. On appeal the Board of Immigration Appeals affirmed the denial of the motion and denied petitioner's similar motion to the Board.

The special inquiry officer rested his decision upon his understanding that pe-

Jack E. Tanner (argued), Tacoma, Wash., for petitioner.

Albert E. Stephan (argued), Asst. U. S. Atty., Eugene Cushing, U. S. Atty.,

titioner's claim to persecution was "based solely on the fact that he could be liable to prosecution for violations of the Yugoslavian law for deserting his ship." However, the documents subsequently filed by petitioner with the special inquiry officer and the Board made it clear that this was not the substance of petitioner's claim.

Petitioner's claim, as set out in his notice of appeal and motions for reopening and reconsideration, rested upon the following allegations. Petitioner is a Yugoslavian citizen, but was discriminated against because of his Hungarian extraction. He was trained as a chef, and, after completing trade school, was employed as a chef in various hotels and inns. Following the Hungarian revolution in 1957, petitioner was approached by officials of the Yugoslavian secret police and asked to mingle among the Hungarian refugees and inform the police of the activities of the Hungarian underground. He refused to do so. Because of this refusal the Yugoslavian secret police contacted his employers and caused him to lose several jobs as a chef, and to be turned away when seeking employment while others less qualified were hired. It became impossible for him to obtain employment in the occupation for which he was trained. Eventually, he secured a job as a cook on a merchant vessel because the growing Yugoslavian merchant marine was unable to secure qualified personnel. On an earlier voyage he left his ship in Houston, Texas, and inquired of the FBI as to how he might seek political asylum; he was told to conceal himself until his vessel departed and then ask asylum at the local office of the Immigration and Naturalization Service. Having now done so, if he were returned to Yugoslavia he would be faced with "fizical [sic] abuse as well as long confinement since my action

would be considered open defiance and denunciation of Communism. They would make it impossible for the rest of my life to earn a decent living to support my family."

■ In affirming the denial of petitioner's motion to reopen, the Board of Immigration Appeals applied legal standards which reflect, in our opinion, an erroneous interpretation of section 243(h). Whatever the scope of review of factual aspects of decisions under this section, it is now well settled that the "standards employed by the Attorney General in exercising his discretion under § 243(h) are subject to judicial review." Sovich v. Esperdy, 319 F.2d 21, 26 (2d Cir. 1963).[1] An administrative decision based upon erroneous legal standards cannot stand. SEC v. Chenery Corp., 318 U.S. 80, 94, 63 S.Ct. 454, 87 L.Ed. 626 (1943). Three erroneous legal standards were applied by the Board in this case.

■ 1. The Board appears to have equated petitioner's fear of punishment for having sought political asylum in this country with a fear of punishment for having deserted his ship. The critical difference between the two under section 243(h) is spelled out in Sovich v. Esperdy, *supra*, 319 F.2d at 28: Congress did not intend to make the United States a refuge for common criminals, but it did intend to grant asylum to those who would, if returned, be punished criminally for violating a politically motivated prohibition against defection from a police state. The Board itself has recently recognized that relief may be afforded under section 243(h) if an alien can show "that his departure was politically motivated and that any consequence he faces on return are political in nature," even though they take the form of criminal penalties for flight. Matter of Janus and Janek, Int. Dec. No.

---

1. *Accord,* Soric v. Immigration & Naturalization Service, 346 F.2d 360, 361 (7th Cir.), *vacated on other grounds,* 382 U.S. 285, 86 S.Ct. 432, 15 L.Ed.2d 330 (1965); Dunat v. Hurney, 297 F.2d 744, 746 (3d Cir. 1961); 2 C. Gordon & H. Rosenfield, Immigration Law and Procedure § 8.14, at 8-94—8-95 (rev. ed. 1967). *See also* Kalatjis v. Rosenberg, 305 F.2d 249, 252 (9th Cir. 1962); Blazina v. Bouchard, 286 F.2d 507, 511 (3d Cir. 1961).

1900, decided July 25, 1968. Petitioner appears to have been denied the benefit of an evaluation of his allegations against the standard reflected in this more enlightened interpretation of the statute.

■ 2. The Board concluded that if petitioner were returned to Yugoslavia he would not be denied employment but would simply be assigned to ships not destined for this country. The Board rested this conclusion entirely upon its decision in Matter of Banjeglav, 10 I. & N. Dec. 351 (1963), in which another Yugoslavian seaman testified that this would be the consequence of his own conduct. Since the seaman in the latter case did not allege a history of years of racially or politically motivated employment discrimination preceding his defection, the prediction, even if accurate as to him, is wholly inapplicable to petitioner. Under the statute petitioner was entitled to a determination based upon the probability of persecution of himself, not of others. Cf. Cheng Kai Fu v. Immigration & Naturalization Service, 386 F.2d 750, 753 (2d Cir. 1967).[2]

3. An even more serious problem arises from the significance which the Board attached to its conclusion that some employment opportunity would remain available to petitioner in Yugoslavia. This, the Board said, "would deprive of any validity the possible claim that he would be subjected to economic sanctions so severe as to deprive him of all means of earning a livelihood." The standard here applied by the Board is clearly wrong.

Until 1965, the Attorney General's authority to withhold deportation under section 243(h) was limited to those cases in which the alien could show the probability of *"physical* persecution." The significance of the adjective is illustrated by the decision in Blazina v. Bouchard, 286 F.2d 507, 511 (3d Cir. 1961.) There, the court held that "[b]efore the Attorney General may grant relief under section 243(h) it must be shown to his satisfaction that, if deported, the alien would be subject not only to persecution, but to physical persecution." The latter phrase, the court held, "[should] be taken to mean confinement, torture, or death inflicted on account of race, religion, or political viewpoint."[3] The court concluded that the fact that Blazina "will be 'looked down upon' and will encounter some 'complications,'" because of his religious beliefs, though "deplorable," was not enough, since it did not constitute "physical" persecution.

In Dunat v. Hurney, supra, 297 F.2d at 753, the same court held that under section 243(h) as it then read, "economic proscription so severe as to deprive a person of all means of earning a livelihood may amount to physical persecution." But mere discrimination in employment was not enough; "denial of all types of employment" was necessary to constitute "physical persecution." Soric v. Flagg, 303 F.2d 289, 290 (7th Cir. 1962).[4] This is the standard which the Board applied in the present case.

However, section 243(h) was amended in 1965, by the same bill which generally liberalized the Immigration and Nation-

2. In a decision involving discretionary relief under the adjustment-of-status provisions of § 245 of the Act, 8 U.S.C. § 1255 (1964), the Board itself recognized this common-sense proposition. Matter of Vega, 11 I. & N. Dec. 337, 339 (1965), *quoted in* Santos v. Immigration & Naturalization Service, 375 F.2d 262, 264 (9th Cir. 1967). It said of the special inquiry officer's action in that case:
"[R]ecognizing the fact that our precedent decisions are binding upon the special inquiry officer, nevertheless we believe that the special inquiry officer must base his conclusions where a matter of discretion is concerned on an evaluation of all the facts and circumstances of the particular case before him."

3. *Accord,* Kalatjis v. Rosenberg, 305 F.2d 249, 252 (9th Cir. 1962).

4. *Accord,* Diminich v. Esperdy, 299 F.2d 244, 246–248 (2d Cir. 1961); 1 C. Gordon & H. Rosenfield, Immigration Law and Procedure 5–126 (rev. ed. 1967).

ality Act by abolishing the "national origins" system. The adjective "physical" was deleted, and the language was modified to read, "persecution on account of race, religion, or political opinion."

This amendment followed repeated criticism of the narrowness of the restriction to "physical" persecution,[5] including a specific reference to rulings that "reducing a workman to the lowest stage of ability to work, and thereby depriving him of opportunity of providing for himself and his family, [is] not 'physical.'" Congressman Feighan, Chairman of the House Committee which later proposed the amendment, and floor manager of the bill, expressed approval of the latter criticism.[6]

On another occasion, Congressman Feighan said of the "physical persecution" requirement that "[w]e should * * * remove from the law this outmoded concept."[7] In offering the language which was eventually adopted,[8]

Congressman Poff stated: "The clause 'physical persecution' is entirely too narrow. It is almost impossible for the alien under an order of deportation to assemble the quantum of evidence necessary to discharge his burden of proof." 111 Cong.Rec., pt. 16, at 21804 (August 25, 1965).

From these and other[9] statements in the legislative history of the amendment, it seems beyond argument that by deleting the word "physical," Congress intended to effect a significant, broadening change in section 243(h) which would lighten the burden imposed on applicants for asylum by removing the requirement that they show threatened bodily harm. This intent seems especially relevant in cases of alleged economic persecution. The burden of showing a probable denial of *all* means of earning a livelihood arose from the necessity of showing bodily harm. It was a particularly difficult burden for an alien to discharge, and

5. *See, e. g.,* Hearings on S. 500 Before the Subcomm. on Immigration & Naturalization of the Senate Judiciary Comm., 89th Cong., 1st Sess., pt. 2, at 535, 887 (1965); Hearings on H.R. 2580 Before Subcomm. No. 1 of the House Judiciary Comm., 89th Cong., 1st Sess., at 213, 217 (1965); Hearings on H.R. 7700 Before Subcomm. No. 1 of the House Judiciary Comm., 88th Cong., 2d Sess., pt. 3, at 860–61 (1964). *See also* Joint Hearings on S. 716, H.R. 2379, and H.R. 2816 Before the Subcommittees of the Committees of the Judiciary, 82d Cong., 1st Sess., 438, 449, 539–40, 628, 681 (1952).

6. 1964 House Hearings, *supra*, note 5, at 860–61.

7. 1965 House Hearings, *supra*, note 5, at 217.

8. As originally reported, H.R. 2580, which became the 1965 Act, merely deleted the word "physical." *See* 111 Cong.Rec., pt. 16, at 21802 (Aug. 25, 1965). Congressman Poff ordered his amendment to make it clear that only persecution "on account of race, religion, or political opinion" was to be a basis for relief. *See id.* at 21804 (remarks of Congressman Poff).

9. *See* S. Rep. No. 748, 89th Cong., 1st Sess., 1965 U.S.Code Cong. & Ad.News, pp. 3328, 3343; H.R.Rep. No. 745, 89th

Cong., 1st Sess., at 22 (1965); 111 Cong. Rec., pt. 16, at 21586 (Aug. 24, 1965) (remarks of Congressman Feighan). The House Report stated, "[t]echniques of persecution are not limited to bodily violence alone." Congressman Feighan said on the House floor, "[t]yranny over the mind and spirit of a person has been demonstrated as more fearsome than the ancient methods of torture which characterized the Communist takeover of many countries of Central and East Europe."

The techniques Congress seems to have in mind are illustrated in a recent press report, reading in part, "The Soviet Union is in the throes of a kind of purge. For the past few months citizens who have expressed dissent from Kremlin actions or policies have been losing their jobs and have been forbidden to live in major cities." The author describes this use of economic sanctions as "a muted purge in neo-Stalinist style," and comments that although "[o]n the surface the forms of socialist legality are respected * * * the intimidating effect remains." *See* Wohl, "Soviet Dissenters Hit by 'Purge,'" Christian Science Monitor, Jan. 20, 1969, at 1. Such economic sanctions would not have qualified as "physical persecution," since its victims are apparently not deprived of all means of earning a livelihood.

resulted in the denial of relief in cases of economic persecution though the harassment was substantial.

The amendment thus eliminated the premise upon which courts construing the old statute—and the Board in this case—based the rule that, to come within the reach of section 243(h), a denial of employment opportunities must extend to all means of gaining a livelihood. The amended statute shifts the emphasis from the consequences of the oppressive conduct to the motivation behind it. An alien is now eligible for the humanitarian relief provided by the statute if he can show that, if deported, he would probably suffer persecution because of race, religion, or political opinion.

■ No doubt "persecution" is too strong a word to be satisfied by proof of the likelihood of minor disadvantage or trivial inconvenience. But there is nothing to indicate that Congress intended section 243(h) to encompass any less than the word "persecution" ordinarily conveys—the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive. *See* Webster's Third New International Dictionary 1685 (1965).

■ Under the amended statute, therefore, a probability of deliberate imposition of substantial economic disadvantage upon an alien for reasons of race, religion, or political opinion is sufficient to confer upon the Attorney General the discretion to withhold deportation.

■ Because the Board's decision may have been infected by the application of these three erroneous legal standards, the Board's order must be vacated. Moreover, fairness requires that the petitioner be afforded an opportunity to present evidence at a reopened hearing before a special inquiry officer, conducted in the light of proper statutory standards. Cf. Bregman v. Immigration & Naturalization Service, 351 F.2d 401, 403 (9th Cir. 1965).

A reopening of the proceedings is required for additional reasons.

As we have noted, petitioner first raised his allegations with respect to harassment by the Yugoslav secret police after his deportation hearing had concluded. In its opinion the Board referred to these assertions but apparently discounted them entirely, finding that they were "completely belied" by petitioner's testimony at the hearing that the reason he ceased working on shore and started working on ships was to obtain a home for his family.[10] Far from being "completely belied" by this testimony, petitioner's claim is consistent with it. The record reveals no reason for not interpreting petitioner's position as being that he took employment in the merchant marine in order to provide a home for his family, which he had been unable to obtain as a chef ashore because pressure by the secret police made it impossible for him to work in that capacity.

■ The Board's finding that the testimony referred to "completely belied" petitioner's claim is not based upon a weighing of the evidence but upon a patent misconstruction of the record. Such a finding is arbitrary and capri-

10. The Board mentioned in passing that petitioner's motion to reopen was not accompanied by affidavits or other evidentiary material as required by the regulations. 8 C.F.R. §§ 3.8(a), 103.5, 242.22. We attach no great significance to this circumstance since the Board apparently did not and since the requirement was substantially complied with by petitioner's notice of appeal and affidavits submitted in his motion to the Board to reconsider, which stated the new facts which he sought an opportunity to prove. Novinc v. Immigration & Naturalization Service, 371 F.2d 272 (7th Cir. 1967), is distinguishable. Petitioner there not only failed to supply evidentiary material, but also failed to state the new facts which he would seek to prove at the reopened proceeding.

cious (cf. United States ex rel. Fong Foo v. Shaughnessy, 234 F.2d 715, 719 (2d Cir. 1955)); and where, as in this case, there is substantial doubt that the administrative agency would have reached the result it did absent the defective finding, remand is required. Braniff Airways, Inc. v. CAB, 126 U.S.App.D.C. 399, 379 F.2d 453, 466–467 (1967).

 Another consideration supports the conclusion that reopeining is required. As we have noted, petitioner did not understand English and was not represented by counsel at the original hearing.[11] His testimony was elicited under interrogation through an interpreter, by a trial attorney, whose funcion at deportation hearings is to represent the government, not the alien. See 8 C.F.R. § 242.9(a). Although petitioner had indicated his desire to apply for section 243(h) relief, the avowed purpose of the questioning, according to the trial attorney, was to determine whether there was enough substance to petitioner's persecution claim to justify a continuance to allow him to file the formal application and pay the fee contemplated by the regulations. 8 C.F.R. §§ 103.7(b) (1), 242.17(c), (d). At the conclusion of the interrogation, however, the special inquiry officer treated the proceeding as presenting an application for section 243 (h) relief, though none had been formally made and no fee had been paid. In requesting reopening, petitioner asserted that he did not fully understand the nature of the proceedings or the meaning of the questions asked, and was unable, under the trial attorney's questioning, to convey the full basis of his fear of persecution. On its face, the transcript lends substantial support to these assertions.[12]

It is particularly important that an applicant for relief under section 243(h) have a reasonable opportunity to present his proofs, for the stakes are high. 1 C. Gordon & H. Rosenfield, supra, at 5–128. We have grave doubt that the hearing as conducted met this standard.

Reversed and remanded with instructions to reopen proceedings before the special inquiry officer on petitioner's application for relief under section 243 (h).

11. In Rose v. Woolwine, 344 F.2d 993, 995 (4th Cir. 1965), the fact that the alien was not represented by counsel was the principal factor relied upon by the court in holding that the Board abused its discretion by denying a motion to reopen. See also United States ex rel. Castro-Louzan v. Zimmerman, 94 F.Supp. 22, 25–26 (E.D.Pa.1950).

12. Petitioner was kept in detention during much of the time he was in the United States before the hearing was held. When the special inquiry officer asked the petitioner when he would be ready to present his application, the following exchange occurred:
"A. I have a paper that I got in Portland and left it with a friend of mine over there. If I have to make out an application I can do it.
Q. Do you have sufficient money to pay the fee?
A. I have about $30.
Q. How much time do you think you would need before you would be ready to proceed?
A. What else do I need besides what I have done so far?
Q. Well, you are the one that is making the application. I don't know what your claims are, or what you would need. You would be required to show that you would be persecuted because of your race, religion, or political belief if you returned to Yugoslavia."
Not all of petitioner's answers to the questions asked him were responsive. For example, after the trial attorney had completed his examination, the special inquiry officer asked petitioner if he had anything else to present. Petitioner replied, "I can't go back any more because they would keep me out of that." No effort was made to clarify this enigmatic response.