97 F.3d 1459
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Leonardo C. HERRERA, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-70233.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 11, 1996.
Decided Aug. 30, 1996.
 
 Petition to Review a Decision of the Immigration and Naturalization Service, No. Aff-qwz-axi.
 B.I.A.
 REVIEW GRANTED.
 Before: WOOD, JR.* , CANBY and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Leonardo C. Herrera, a native and citizen of the Philippines, petitions for review of the Board of Immigration Appeals' (BIA) decision affirming the Immigration Judge's (IJ's) denial of his applications for asylum and withholding of deportation pursuant to Immigration and Naturalization Act (INA) §§ 208(a) and 243(h), 8 U.S.C. §§ 1158(a), 1253(h). We have jurisdiction pursuant to 8 U.S.C. § 1105a(a). We conclude that the BIA's determination that Herrera did not suffer past persecution on account of his imputed political opinion is not supported by substantial evidence. We therefore grant Herrera's petition for review and remand to the BIA for consideration under the appropriate legal standards.
 
 I.
 
 3
 We need not repeat all of the facts relevant to Herrera's claims because the parties are familiar with them. Herrera left the Philippines after both the armed wing of the Philippines Communist Party (the NPA) and the Philippines police tortured him and threatened his life. Herrera seeks review of, among other things, the BIA's determination that neither the NPA nor the Philippine police persecuted him on account of his imputed political opinion.[1] We review under a substantial evidence standard the BIA's determination[2] that Herrera did not establish past persecution on account of the political opinions imputed to him by the NPA and the Philippine Government. Ghaly v. I.N.S., 58 F.3d 1425, 1429 (9th Cir.1995).
 
 
 4
 The Attorney General has discretion to grant political asylum to any alien who is unwilling or unable to return to his or her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1101(a) (42(a), 1158(a). Persecution is " 'the infliction of suffering or harm upon those who differ (in race, religion or political opinion) in a way regarded as offensive.' " Desir v. Ilchert, 840 F.2d 723, 726-27 (9th Cir.1988) (quoting Kovac v. I.N.S., 407 F.2d 102, 107 (9th Cir.1969)). Persecution on account of political opinion includes persecution on account of a political opinion that the NPA or Philippine government imputes or attributes to Herrera, even if Herrera does not actually hold that political opinion. See Aguilera-Cota v. I.N.S., 914 F.2d 1375, 1379-80 (9th Cir.1990).
 
 
 5
 The Government attempts to fit this case into the framework of I.N.S. v. Elias-Zacarias, 502 U.S. 478 (1992) (guerillas' persecution of petitioner was on account of his resistance to their forced recruitment, not on account of any actual or imputed political opinion) by arguing that the NPA did not persecute Herrera because of his actual or imputed political opinion, but because his job was adversely affecting the NPA and they wished to gain his cooperation. This case, however, is distinguishable from Elias-Zacarias. Elias-Zacarias, unlike Herrera, attempted to maintain an appearance of political neutrality and did not engage in activities that caused his persecutors to believe that he politically opposed their cause. Id. at 482. In contrast, as Supervisor of the Agrarian Reform Program (SUARPO) Herrera actively engaged in activities that his persecutors viewed as undermining their own political agenda. Cf. Aguilera-Cota, 914 F.2d at 1379 (politically neutral alien employed by the government of El Salvador was persecuted on account of his imputed political opinion because the threats against him were based on his employment and presumed support of the government).
 
 
 6
 The Government unsuccessfully attempts to sever Herrera's job function from the political opinion with which his NPA persecutors associated it. Herrera's position and activities as SUARPO are inseparable from the Philippine governments' political agenda in implementing the Agrarian Reform Program. Herrera was a government official implementing a politically controversial program that the NPA opposed. The IJ conceded that Herrera's position as SUARPO was "a position that may have been in opposition to [NPA] attempts to recruit peasants into the NPA." Herrera also had a long prior history of working to further farmers' rights and economic well-being. He had held several government positions, including the SUARPO position, towards these ends.
 
 
 7
 The IJ found that Herrera failed to present specific facts establishing that he was persecuted on account of a protected ground. This finding, which was adopted by the BIA, is not supported by substantial evidence. A reasonable factfinder could conclude only that the NPA believed that Herrera supported the government's Agrarian Reform Program instead of the NPA's land distribution plan, and that the NPA attributed these views to Herrera because of his activities as SUARPO. A reasonable factfinder therefore would be compelled to conclude that the NPA's treatment of Herrera was persecution on account of his imputed political opinion. Cf. id.
 
 II.
 
 8
 Herrera also argues that his three-day detention by the police was persecution within the meaning of 8 U.S.C. § 1101(a)(42)(A). We agree that Herrera's treatment at the hands of the police constitutes past persecution on account of his imputed political opinion.
 
 
 9
 The IJ's conclusion that the police merely wanted to obtain information about the NPA from Herrera finds little support in the record. The Director of the Agrarian Reform Program accused Herrera of being a member of the NPA, and during his detention the police pressured Herrera to confess his support for the NPA. The officers repeatedly questioned Herrera about his involvement with the NPA and forced him to agree to inform against the NPA. The officers threatened to execute Herrera if they found out that he was an NPA supporter.
 
 
 10
 During the three days that the police held Herrera without charges or a warrant, they inflicted significant, degrading physical abuse on him. They forced him to drink large quantities of water, causing him to urinate in his pants, and forced him to ingest tablets that rendered him unconscious. Police officers placed bullets between his fingers and pressed his hands, inflicting extreme pain. This abuse was motivated by the Director's and police officers' beliefs that Herrera had stopped performing his job duties because he was an NPA supporter or member.[3]
 
 
 11
 This infliction of suffering on Herrera constitutes persecution on account of imputed political opinion. See Desir, 840 F.2d at 726-27. Substantial evidence does not support the BIA's conclusion to the contrary; a reasonable factfinder would be compelled to conclude that the police persecuted Herrera because they attributed to him a political opinion in support of the NPA.
 
 III.
 
 12
 Herrera is eligible for a discretionary grant of asylum because he has established past persecution on account of his imputed political opinions. See Rodriguez-Matamoros v. I.N.S., 86 F.3d 158, 160 (9th Cir.1996); Kazlauskas v. I.N.S., 46 F.3d 902, 905 (9th Cir.1995). Although the BIA may consider the likelihood of future persecution in determining whether asylum should be granted, Rodriguez-Matamoros, 86 F.3d at 160-61, Herrera's past persecution entitles him to a presumption that he has a well-founded fear of future persecution. See Prasad v. I.N.S., 83 F.3d 315, 318 (9th Cir.1996). To rebut this presumption, the Government must establish that conditions in the Philippines have changed to such an extent that Herrera no longer has a well-founded fear of being persecuted by either the NPA or the Philippine government upon his return. Id.; Singh v. Ilchert, 63 F.3d 1501, 1510 (9th Cir.1995).
 
 
 13
 Because the BIA erroneously concluded that Herrera did not suffer past persecution, it did not exercise its discretion to grant asylum and did not consider whether the Government rebutted the presumption of future persecution. We therefore remand this case to the BIA so that it may exercise its discretion to grant asylum under the appropriate legal standards.
 
 
 14
 PETITION FOR REVIEW GRANTED.
 
 
 
 *
 The Honorable Harlington Wood, Jr., United States Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 The Government argues that Herrera failed to present his imputed political opinion claim to the BIA. This argument is without merit. The IJ addressed the issue of imputed political opinion in her decision, and the BIA's opinion adopted all of the IJ's findings and reasonings. Herrera's brief to the BIA also asserted that he feared persecution as a suspected NPA supporter. Even if Herrera had not clearly raised the issue in his asylum application or pleadings below, persecution on account of imputed political opinion is encompassed within an alien's claim of persecution on account of political opinion. See Aguilera-Cota v. I.N.S., 914 F.2d 1375, 1379-80 (9th Cir.1990)
 
 
 [2]
 Because the BIA's opinion adopted all of the IJ's findings and reasoning, we review the IJ's opinion as if it were the opinion of the BIA. Alaelua v. I.N.S., 45 F.3d 1379, 1381-82 (9th Cir.1995)
 
 
 [3]
 The fact that other Agrarian Reform Department employees may have framed Herrera by reporting him as an NPA member to his superiors is irrelevant because the Director and the police believed that the reports were accurate