**NOT RECOMMENDED FOR FULL TEXT PUBLICATION**
**File Name: 04a0048n.06**
**Filed: October 28, 2004**

**NO. 03-3937**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| XIU MING CHEN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| JOHN ASHCROFT, | ) | |
| ATTORNEY GENERAL, | ) | |
| | ) | |
| Respondent. | ) | |

Before: GUY and SUTTON, Circuit Judges; CARR, District Judge.[*]

CARR, District Judge. This is an immigration case in which the alien petitioner Xiu Ming Chen, a native and citizen of the People's Republic of China, seeks judicial review of a final order of removal denying her application for asylum issued by the Board of Immigration Appeals (Board). The Board affirmed the Immigration Judge's decision without a separate written opinion, thus the Immigration Judge's decision is the final agency order for purposes of review. The Immigration Judge determined that petitioner-appellant did not suffer from persecution, despite evidence that she was not allowed to continue her education because of her parents' criminal convictions for violating China's family planning policy and fraud, for which they were

* The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

sentenced to one-year terms. (J.A. 88, 92.) For the following reasons, we AFFIRM.

## I. BACKGROUND

Xiu Ming Chen, a citizen of China, attempted to enter the United States illegally (via a fraudulent Japanese passport, under the visa waiver pilot program) in May, 1999, at the age of sixteen. She was apprehended immediately, but then paroled into the country pending initiation of removal proceedings.

On April 16, 2001, the Immigration and Naturalization Service (INS) issued a "Notice of Referral to Immigration Judge" to Chen. In subsequent removal proceedings, Chen applied for asylum and withholding protection. Chen appealed the Immigration Judge's decision to the Board, which, on June 9, 2003, affirmed the Immigration Judge's decision without opinion. This timely petition for review followed.[1]

Chen's family had problems with the Chinese government. Her parents, who have four children, violated China's family planning policies, for which her father was fined 5,000 yen and sterilized.

Chen's parents were later convicted of fraud for a bait-and-switch scheme unrelated to the family planning violation. The crime occurred in June of 1991. Chen's father was arrested in October, 1992. Her mother fled and was not found and arrested until 1996. Both Chen's parents were sentenced to jail for one year as a result of these convictions.

---

[1] This Court has jurisdiction to review the denial of asylum under 8 U.S.C. § 1252(a)(1).

The Immigration Judge found that Chen's parents were political criminals in the sense that "in China everything is political. All crime is political," but that "they would be considered in this country to be regular criminals not political criminals." The record is not clear as to where her parents are, but it appears they are still in China.[2]

Chen alleges that she suffered discrimination by the Chinese government because of her parent's criminal status, specifically in regard to her education. (J.A. at 14.) She claims that although she had been an excellent student in school, the government punished her for her family's rejection of the family planning policy and subsequent fraud convictions by overlooking her for outstanding student awards and ultimately expelling her permanently from school. (J.A. at 14.) Chen fears that she will face discrimination in employment because of her family's criminal history, and will have great difficulty getting a decent job because of her lack of education. (J.A. at 16.)

## II. DISCUSSION

### A. Standard of Review

An agency decision to deny asylum is entitled to a high measure of deference. As explained in *Kolaida v. INS*:

> The Board's determination "must be upheld if 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1105a(a)(4)). Under this deferential standard, we may not reverse the Board's determination simply because we would have decided the matter differently. *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998); *Klawitter v. INS*, 970 F.2d 149, 151-52 (6th Cir. 1992). In order to reverse the Board's factual determinations, we must find that the evidence "not only supports a contrary conclusion, but indeed

---

[2] Chen is married to a Taiwanese man who resides in the United States under questionable legal status.

*compels* it." *Klawitter*, 970 F.2d at 152.  The Supreme Court has explained that the appropriate inquiry is whether the evidence "was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." *Elias-Zacarias*, 502 U.S. at 481.

259 F.3d 482, 486 (6th Cir. 2001).

## B. Legal Framework

The Attorney General has discretion to grant asylum to a person who qualifies as a "refugee." *See Yu v. Ashcroft*, 364 F.3d 700 (6th Cir. 2004).   A refugee is one who "is unable or unwilling to return to . . . [her home country] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group or political opinion." 8 U.S.C. §1101(a)(42)(A).

To obtain asylum, an alien must show that she is a refugee entitled to a discretionary grant of asylum.  *See Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1998).  An asylum applicant bears the burden of establishing that she qualifies as a refugee "either because he or she has suffered past persecution or because he or she has a well-founded fear of future persecution." 8 C.F.R. § 208.13(b).

An alien may establish a well-founded fear of future persecution by showing:

(1) he or she has a fear of persecution in his or her country on account of race, religion, nationality, membership in a particular social group, or political opinion; (2) there is a reasonable possibility of suffering such persecution if he or she were to return to that country; and (3) he or she is unable or unwilling to return to that country because of such fear.  An applicant's fear of persecution must be both subjectively genuine and objectively reasonable.

*Mikhailevitch*, 146 F.3d at 389.

If the applicant establishes past persecution, she is entitled to a presumption of a well-founded fear of future persecution. The burden then shifts to the INS to show by a preponderance

4

of the evidence that "there has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country . . . on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 208.13(b)(1)(i)(A); *see also Mikhailevitch*, 146 F. 3d at 389; *Abay v. Ashcroft*, 368 F.3d 634 (6th Cir. 2004).

### C. Economic or Educational Persecution

Chen claims that she has suffered and will continue to suffer economic persecution because she was unable to pursue an education beyond sixth grade. She claims that the decision of the Chinese authorities to bar her from continuing in school beyond the sixth grade resulted from her parents' violation of the Chinese family planning policies. She contends, further, that excluding her from obtaining a basic education beyond sixth grade prevents her from gaining the skills and training necessary to obtain all but the lowest level of employment.[3] She asserts that these consequences, which were foreseeable and lasting, are so severe that they must be deemed to have resulted in life-long and substantial economic disadvantage.

Chen argues that the petitioner's circumstances in *Berdo v. INS*, 432 F.2d 824 (6th Cir. 1970), were comparable to her own. In that case, the petitioner, who had incurred a demotion, reduction in pay, assignment of menial tasks, and denial of access to education, was found to have suffered persecution.

Though, perhaps, superficially similar, the circumstances in *Berdo* differ significantly from those presented by the petitioner in this case. In *Berdo* the clear purpose of the actions

---

[3] In other words, she is not saying, "I didn't get an education, so let me in the United States." She is saying, rather, "I didn't get an education because my parents violated Chinese family planning policies and were fined/sterilized for doing so. So let me in the United States."

taken against the petitioner was to compel him to become a member of the Communist party. As the court pointed out:

> Berdo was subjected to a *deliberate imposition of substantial economic disadvantage* to bring about his affiliation with the Communist Party in Hungary; that he would be subjected to a deliberate imposition of substantial economic disadvantage as a defector, if he were deported; and that the uncontroverted expert testimony in the case shows that he would probably be subjected to imprisonment and, because of his killing of a Russian soldier in the Revolution of 1956, would, in all probability face, a sentence of death.

*Berdo*, 432 F.2d at 847 (emphasis added).

Thus, two factors in *Berdo* led to the decision to grant asylum. First, he had been involved in the armed uprising against the Russians in 1956. Second, he was faced with the distinct possibility, if not substantial probability or certainty, of imprisonment or death were he not to be granted asylum. The extent and nature of the petitioner's anti-government activities, plus the severity of the consequences were he not granted asylum in *Berdo* distinguish that case from this case.

Chen also cites *Borca v. INS*, 77 F.3d 210 (7th Cir. 1996), in which the appellate court determined that the petitioner was likely to suffer economic persecution. In *Borca*, the petitioner's employer, a hospital director, terminated her on account of her public opposition to the Romanian government. The director told the petitioner, moreover, that she would be barred from assuming any other form of government employment, except perhaps as a farm laborer. *Borca*, 77 F.3d at 213.

There are some superficial similarities between the petitioner's situation in this case and that of the petitioner in *Borca*: here, as in that case, the government's decision to limit educational opportunities will have continuing adverse economic consequences.

Chen, however, has not specifically been barred from pursuing a career, nor have her occupational prospects been curtailed directly. Despite the importance of an education, denial of access to education is not *ipso facto* persecution.

Unlike the petitioner in *Borca*, moreover, the petitioner here has neither encountered an alteration in her employment nor been informed that all but the most menial of employment opportunities will be available due to her clearly and publicly expressed political views. Chen's circumstances do not rise to a level equivalent to those in *Borca*.

Finally, Chen cites *Kovac v. INS*, 407 F.2d 102 (9th Cir. 1969), in which the appellate court determined that the petitioner may have suffered persecution when the Yugoslavian secret police caused him to be terminated from several jobs. As a result, the petitioner in *Kovac* was unable to work in the field for which he was trained. *Id.* at 104.

As with the other cases cited by the petitioner in this case, her situation is distinguishable from that of the petitioner in *Kovac*. Unlike the petitioner here, the petitioner in *Kovac* had received specialized training and had a family to support. He had, moreover, been subjected to repeated and overt police action directed and intended to curtail his employment opportunities and economic circumstances.

Although *Kovac* indicates that "deliberate imposition of substantial economic disadvantage" may constitute economic persecution, *id*. at 107, the court limited the scope of that statement:

> No doubt "persecution" is too strong a word to be satisfied by proof of the likelihood of minor disadvantage or trivial inconvenience. But there is nothing to indicate that Congress intended section 243(h) to encompass any less than the word "persecution" ordinarily conveys – the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive.

7

*Id*.

To the extent the denial of educational opportunities, without more, might be deemed to be persecution, *see Korniejew v. Ashcroft*, 371 F.3d 377 (7th Cir. 2004); *Bucur v. INS*, 109 F.3d 399 (7th Cir. 1997), a distinction must be made between denial of education on the basis of policies directed at a particular group and *ad hoc* discrimination randomly directed at a particular individual. A government's treatment of individuals due to their membership in a group against whom the government's policies are directed, such as the exclusion of Jewish students from German universities under the Nurnberg Laws, constitutes persecution.

The record in this case contains no basis for concluding that the Chinese government bars all students whose parents have violated that country's family planning laws from education beyond the sixth grade. Indeed, there is nothing in the record to indicate that the petitioner's siblings have been denied education beyond that level.

Thus, it is at least as possible, if not more likely, that the steps taken against the petitioner resulted either from her parents' criminal conviction of an economic crime against the state, or the combination of their crime and violation of China's family planning laws, as it is that the government acted on the basis solely of the family planning violation.

The Immigration Judge's conclusion that the petitioner did not suffer persecution, despite the denial to her of an education beyond the sixth grade is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias Zacarias*, 502 U.S. 478, 481 (1992). Nothing in the record compels a contrary conclusion.

## III.  CONCLUSION

8

For these reasons, we AFFIRM the judgment of the Board of Immigration Appeals.