**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

| | |
|---|---|
| NEFI JAVIER VALERO-AVENDANO | |
| Petitioner, | No. 10-9550 (Petition for Review) |
| v. | |
| ERIC H. HOLDER, JR., United States Attorney General, | |
| Respondent. | |

**ORDER AND JUDGMENT**[*]

Before **HOLMES** and **McKAY**, Circuit Judges, **PORFILIO**, Senior Circuit Judge.

Petitioner Nefi Javier Valero-Avendano (Mr. Valero-Avendano), a native and

citizen of Venezuela, petitions for review of the Board of Immigration Appeals'

(BIA) decision affirming the Immigration Judge's (IJ) denial of his applications for

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

asylum and restriction on removal.[1]  We lack jurisdiction to consider the determination that Mr. Valero-Avendano's asylum application was untimely.  *See* 8 U.S.C. § 1158(a)(3); *Ferry v. Gonzales*, 457 F.3d 1117, 1129-30 (10th Cir. 2006).  We do, however, have jurisdiction to consider the restriction-on-removal claim, *see* 8 U.S.C. § 1252(a), and we affirm for the reasons explained below.

## I.  BACKGROUND

In 1996, when he was twenty-three years old, Mr. Valero-Avendano illegally entered the United States.  Some ten years later, the Department of Homeland Security served him with a Notice to Appear.  At his initial hearing before the IJ, Mr. Valero-Avendano conceded his removability, but sought asylum based on his alleged fear of persecution in Venezuela because he and his family are members of Acción Democrática, a political party opposed to the government of Venezuelan President Hugo Chavez.[2]  At a subsequent merits hearing before the IJ, Mr. Valero-Avendano conceded that his asylum application was untimely.  Consequently, the IJ considered the matter as also presenting an application for restriction on removal and protection under the Convention Against Torture.  *See* Admin. R. at 169-70.

---

[1]     In his brief, Mr. Valero-Avendano does not contest the BIA's affirmance of the IJ's determination to deny him protection under the Convention Against Torture.  That issue is therefore waived.  *See Kabba v. Mukasey*, 530 F.3d 1239, 1248 (10th Cir. 2008).

[2]     Mr. Valero-Avendano's other bases for asylum (his membership in the Church of Jesus Christ of Latter-Day Saints, and the fact that his children were born in the United States and do not speak Spanish) are not argued in his brief and thus are not at issue on appeal.  *See Kabba,* 530 F.3d at 1248.

After considering the evidence including testimony from Mr. Valero-Avendano, the IJ denied relief, concluding first that Mr. Valero-Avendano's failure to file an asylum application within one year after his arrival in the United States doomed his attempt to qualify for such relief. *Id.* at 131. With regard to Mr. Valero-Avendano's contention that changed conditions in Venezuela should excuse the tardy filing under 8 U.S.C. § 1158(a)(2)(D), the IJ determined that, while there had been many changes in Venezuela over the years, "it does not appear that there have been changed conditions, or extraordinary circumstances . . . that would excuse the one year filing deadline." *Id.*

Turning to the application for restriction on removal, the IJ concluded that Mr. Valero-Avendano had not demonstrated past persecution, a finding unchallenged on appeal. The IJ further determined that, while those opposed to President Chavez may be denied government jobs and benefits and that "there may be some discrimination[,] . . . those factors alone are insufficient to rise to the level of persecution, as required" to qualify for restriction on removal. *Id.* at 134. The BIA upheld both of the IJ's determinations and dismissed the appeal.

## II. ANALYSIS

### A. Standard of Review

Because the BIA issued its own brief single-member order, its decision is the final agency decision that we review. *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). "[I]n deference to the agency's own procedures, we will not

affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance," but "we are not precluded from consulting the IJ's more complete explanation" of the BIA's grounds for denying relief. *Id.* "Our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Sidabutar v. Gonzales*, 503 F.3d 1116, 1122 (10th Cir. 2007) (brackets and quotation omitted).

"In this circuit, the ultimate determination whether an alien has demonstrated persecution is a question of fact, even if the underlying factual circumstances are not in dispute and the only issue is whether those circumstances qualify as persecution." *Hayrapetyan v. Mukasey*, 534 F.3d 1330, 1335 (10th Cir. 2008) (quotation omitted). "[W]e may reverse the BIA's decision 'only if the evidence presented by [the alien] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed.'" *Id.* (alteration in original) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)).

**B. Asylum Claim**

The BIA affirmed the IJ's conclusion that Mr. Valero-Avendano had failed to demonstrate changed conditions in Venezuela sufficient to excuse his untimely asylum application. On appeal, Mr. Valero-Avendano argues that this is error because the agency failed to consider President Chavez's acquisition of power in 2007 to govern Venezuela by decree for an eighteen-month period as the appropriate change-in-country condition. Contrary to Mr. Valero-Avendano's

assertion, however, the BIA did consider this argument, but rejected it because Mr. Valero-Avendano "ha[d] not presented evidence to show that the alleged changed circumstances materially affect his eligibility for asylum."  Admin. R. at 3-4.  We are without jurisdiction to consider this issue.  *See* 8 U.S.C. § 1158(a)(3) (providing no court shall have jurisdiction to review the Attorney General's determination of changed circumstances); *see also Ferry*, 457 F.3d at 1129-30.[3] Therefore, we conclude that Mr. Valero-Avendano's contention of error is unavailing and that we do not have jurisdiction over Mr. Valero-Avendano's asylum claim.

## C.  Restriction on Removal

In order to be eligible for restriction on removal, Mr. Valero-Avendano must show that there is a "clear probability" that he would be persecuted in Venezuela because of his political opinions.  *See* 8 U.S.C. § 1231(b)(3)(A); *see also Elzour v. Ashcroft*, 378 F.3d 1143, 1149 (10th Cir. 2004).[4]  In order to make this showing,

_____

[3]    While we do have jurisdiction to consider constitutional claims and questions of law, *see* 8 U.S.C. § 1252(a)(2)(D), Mr. Valero-Avendano does not argue that the asylum decision involved either of these two jurisdictional bases. His assertion, mentioned only in a section heading of his brief, that the BIA's decision on changed country circumstances was an error of law is insufficient to raise this issue on appeal.  *See Ambus v. Granite Bd. of Educ.*, 975 F.2d 1555, 1558 n.1 (10th Cir. 1992), *modified on other grounds on reh'g*, 995 F.2d 992 (10th Cir. 1993).

[4]    It is undisputed that Mr. Valero-Avendano was never threatened in Venezuela and has not been threatened while in the United States.  Admin. R. at 242-43, 245.  He therefore cannot rely on a showing of past persecution to

(continued...)

-5-

Mr. Valero-Avendano must establish "that such persecution is more likely than not," *Elzour*, 378 F.3d at 1149, and that the economic deprivation his family experiences because of their political beliefs (and that he would probably experience should he return to Venezuela) rises to the level of persecution.

Persecution in the context of establishing eligibility for restriction on removal "is the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive, and requires more than just restrictions or threats to life and liberty." *Witjaksono v. Holder*, 573 F.3d 968, 976 (10th Cir. 2009) (quotation omitted). "The term 'persecution' is not limited to physical harm or threats of physical harm and may include threats of economic harm, so long as the threats, if carried out, would be of sufficient severity that they amount to past persecution." *In re T-Z*, 24 I. & N. Dec. 163, 169 (BIA 2007). However, "employment discrimination . . . does not, without more, constitute persecution." *Vatulev v. Ashcroft*, 354 F.3d 1207, 1210 (10th Cir. 2003).

Mr. Valero-Avendano argues that he meets this standard because he has demonstrated a clear probability of economic persecution should he return to Venezuela. He specifically contends that, because of his political opposition to the Chavez regime, he would be denied employment opportunities and would be ineligible for various forms of government assistance.

---

[4](...continued)
establish a rebuttable presumption of future persecution. *See* 8 C.F.R. § 1208.16(b)(1)(i).

In support of his claim, Mr. Valero-Avendano presented evidence that both a doctor and an engineer in his family have been unable to obtain employment in their respective fields because of their opposition to President Chavez, Admin. R. at 190-91, 236; that his cousin's house was taken and destroyed by the government, *id.* at 199-200;[5] that a family member was fired from his job with the government-run petroleum company because he voted against the government, *id.* at 531; and that his family is ineligible for government assistance because of their opposition to President Chavez, *id.* at 196. Mr. Valero-Avendano stated that various family members signed a document calling for the recall of Mr. Chavez, but that he personally did not sign that document. *Id.* at 191-93. He also testified that both he and his family are members of the anti-Chavez organization, Acción Democrática, *id.* at 182-83, but, as mentioned, admitted that he had never been personally threatened by government authorities, *id.* at 242-43, 245.

On appeal, the BIA cited to the U.S. Department of State's 2007 Background Note for Venezuela describing the very high rates of poverty in that country. The BIA observed that "the respondent must show that he would be subjected to

---

[5] Mr. Valero-Avendano's brief indicates that his cousin's *farm* was confiscated without compensation and destroyed by the government. Pet's Br. at 7, 17. Mr. Valero-Avendano's testimony, however, was that his cousin's *home* was taken and destroyed. Admin. R. at 199-200. There was no evidence that the taking was uncompensated. While Mr. Valero-Avendano also testified about farm confiscation in general, *id.* at 199, he did not state that any farm belonging to him or to his family had been confiscated and/or destroyed by the government, or that farms were being confiscated based on the political affiliation of the owners.

economic difficulties above and beyond those generally shared by others in the country and that these losses involve more than the mere loss of social advantages or physical comforts." Admin. R. at 4. The BIA ultimately concluded that Mr. Valero-Avendano had "presented insufficient evidence to show that he would be subjected to deliberate and severe economic disadvantage because of his political opinion," and had thus failed to show "a clear probability of persecution in Venezuela." *Id.*

On appeal Mr. Valero-Avendano argues that the prevalence of poverty in Venezuela does not preclude him from establishing the possibility of severe economic harm if returned to that country, because, unlike the average poor Venezuelan, his family is ineligible for government assistance due to their anti-Chavez political beliefs. He points to the incidents described above as proof that his family has been persecuted and, by implication, that he would be similarly persecuted if forced to return to Venezuela.

The test relied upon by the BIA requiring an alien to show deliberate and severe economic disadvantage is rooted in *Kovac v. INS*, 407 F.2d 102, 107 (9th Cir. 1969). Under the *Kovac* test, an applicant can support an asylum claim, absent a threat to life or freedom, if the applicant "has suffered a severe *loss* of an *existing* economic/vocational advantage." *Vicente-Elias v. Mukasey*, 532 F.3d

1086, 1089 (10th Cir. 2008).[6] In *Vicente-Elias*, we examined a recent BIA decision where the Board explained the application of *Kovac* to cases involving claims of economic persecution. Quoting *In re T-Z-*, 24 I. & N. Dec. at 171, 173-74, we explained that

> [g]overnment sanctions that reduce an applicant to an impoverished existence may amount to persecution even if the victim retains the ability to afford the bare essentials of life. A particularly onerous fine, a large-scale confiscation of property, or a sweeping limitation of opportunities to continue to work in an established profession or business may amount to persecution even though the applicant could otherwise survive.

*Vicente-Elias*, 532 F.3d at 1089. While there is no evidence that Mr. Valero-Avendano has personally suffered from any of these circumstances, we analyze their relevance here because of his pattern-or-practice claim that anti-Chavez people in Venezuela, including his family, are persecuted because of their political beliefs.

Mr. Valero-Avendano's evidence does not rise to the standard of persecution under this test. There is no evidence in the record of large fines being levied against Mr. Valero-Avendano's family or others similarly situated. The confiscation and destruction of Mr. Valero-Avendano's cousin's house is not a "large-scale confiscation of property" sufficient to constitute persecution,

---

[6] Neither party takes issue with the IJ's reliance on the *Kovac* test under these facts. We therefore assume, without deciding, that *Kovac* is the appropriate measure of whether Mr. Valero-Avendano has demonstrated economic persecution.

especially in light of the fact that the record is silent regarding whether any compensation was paid to the cousin. Nor is there evidence of a large-scale confiscation of farm lands based on the farmers' political opinions. The fact that two of Mr. Valero-Avendano's many cousins could not find work as a doctor and an engineer respectively, does not, without more, demonstrate "a sweeping limitation of opportunities to work" in those fields.

As in *Vicente-Elias*, Mr. Valero-Avendano testified that his life had not been threatened either in Venezuela or later in the United States. *See* Admin. R. at 242-43, 245. He provided no evidence that the lives of his family members had been threatened in Venezuela. The fact that Mr. Valero-Avendano's family is ineligible for government assistance because they do not support the Chavez regime is the kind of institutional discrimination that fails to constitute persecution. *See Vatulev*, 354 F.3d at 1210. Again as in *Vicente-Elias*, members of Mr. Valero-Avendano's family continue to be able to function and provide for themselves despite the discrimination from the government. *See* Admin. R. at 197, 203. After our review of the record, we cannot say that every reasonable factfinder would be compelled to disagree with the BIA's decision upholding the IJ's finding of no clear probability of economic persecution should Mr. Valero-Avendano be returned to his home country.

We also reject Mr. Valero-Avendano's argument that, with regard to establishing a probability of future persecution, the BIA applied too strict a test for

his pattern-or-practice claim, requiring him to show that he would be *singled out* for persecution rather than that he *belongs to a group likely to be persecuted*.[7]

Under the regulations, Mr. Valero-Avendano can pursue two different avenues in his effort to establish fear of future persecution. He can show that there is a pattern or practice of persecution of a group of people in Venezuela on account of their political opposition to President Chavez and that his inclusion in and identification with that group make it more likely than not that he would suffer persecution. *See* 8 C.F.R. § 1208.16(b)(2)(i)-(ii). Alternatively, he can demonstrate a clear probability of persecution by "provid[ing] evidence that [he] would be singled out individually for such persecution." *Id.* § 1208.16(b)(2). "The point of such evidence is to provide a broader basis for an objective fear of future persecution." *Vicente-Elias*, 532 F.3d at 1092. Under either test, however, Mr. Valero-Avendano has failed to establish a likelihood of persecution, either of himself as an individual, or of the group of which he is a member. As in *Vicente-Elias*, Mr. Valero-Avendano's argument is unpersuasive because "it does not address the basic deficiency in his case recognized by the [BIA]: those conditions [he identifies], though indicative of social discrimination and economic disadvantage, do not constitute persecution." *Id.*

## III.  CONCLUSION

---

[7]     Contrary to Respondent's brief at 30-31, Mr. Valero-Avendano advanced this argument to the BIA. *See* Admin. R. at 14.

-11-

The petition for review is DENIED.

Entered for the Court


Jerome A. Holmes
Circuit Judge